## J. MORDIS, *et al.*, v. W. KENNEDY.

BANK CHECK, *Debt Not Paid With, When.* Where a debtor hands to his creditor the check of a third party, payable to bearer, and unindorsed, and such check is not received as payment of the debt, and on presentation is not paid by reason of the suspension of the bank, and is promptly returned to the debtor, and by him to the drawer, who promises to pay the amount thereof to such debtor, and where at the time of drawing the check the drawer has no funds in the bank to meet it, and at the time of the suspension of the bank is still indebted to it in a large amount, *held,* that the debt was not discharged, and that the creditor could recover the same of his debtor, notwithstanding the fact that while living within fifteen miles of the bank he had retained the check twenty-six days before presentation, during twenty-five of which the bank was open, and also that the president of the bank testified that the check would have been paid if presented before suspension.

### *Error from Johnson District Court.*

AT the June Term, 1879, of the district court, *Kennedy,* as plaintiff, recovered a judgment against *J. Mordis, H. Mordis,* and *B. F. Lignon,* partners as Mordis, Son & Lignon, as defendants, in an action on an account for corn sold and delivered. The defense was, payment. The facts are sufficiently stated in the opinion. The defendants bring the case here.

*Burris & Little,* for plaintiffs in error.

*Enoch B. Gill,* and *J. P. Hindman,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on an account for corn sold and delivered. The defense was, payment. The sale was for cash, but on January 4, 1878, the defendants, plaintiffs in error, gave to plaintiff a check of J. P. Hall & Co. on the First National Bank of Kansas City. On January 22, 1878, they gave him another check, drawn by the same party upon the same bank. Plaintiff kept both checks till the 30th of January, and then on presentation found that

the bank had suspended the day before. Kennedy lived about fifteen miles from Kansas City, and the first time he went to Kansas City after the receipt of the checks, was the day he presented them. His excuse for not presenting them before was, that the roads were muddy and he had no business to take him to Kansas City. The checks were returned to defendants a day or two after the suspension. At the time these checks were drawn, Hall & Co. had no funds on deposit to meet them, and when the bank suspended, their account was overdrawn $943.40. Still, according to the testimony of the president of the bank, these checks would have been paid if presented. The checks were not received as payment, and there was no settlement of the matter after the return of the checks. We are aware that as to some of the above matters there is contradictory testimony, but there being only a general finding for plaintiff and no special findings of fact, we must take the case as though the trial court believed the above to be the facts rather than the reverse.

Upon these facts, ought the judgment to stand? It is settled that the mere taking of a bank check is not a payment of the debt, (*Kermeyer v. Newby*, 14 Kas. 164,) and if the check be not paid, the party may return it and sue on the original debt. It is also clear that the same strict rule of presentment and notice does not obtain as between the drawer and drawee. The former is not discharged unless he suffers some loss through the delay of the holder in presenting the check. (*Gregg v. George*, 16 Kas. 546; 2 Daniel on Neg. Insts., p. 513, § 1587.) Therefore Hall & Co., the drawers, were clearly not discharged from their obligation to the party to whom they gave their checks, for they have lost nothing. If the checks had been presented and paid, they would simply have owed the bank so much more — the only difference would have been in the person of the creditor.

But it is claimed that a different rule obtains between the defendants, who received the checks from Hall & Co., and the party to whom they transferred them. This is not a

question between indorser and indorsee, for the checks were payable to bearer. And it may be conceded that in order to charge an indorser, the same rules as to demand and notice apply as in other paper. (2 Daniel on Neg. Insts., § 1594.) It does not appear that defendants received these checks from Hall & Co., as payment of any indebtedness. They were shipping grain to Hall & Co., and these checks, among others, were sent or delivered to them, but so far as appears without any agreement that they should be taken as absolute payment. Again, it appears that Hall & Co., who are now reported as insolvent, did not fail till about June, 1878, and that the defendants continued to have dealings with them after the return of these checks, shipping grain and receiving payment, and that Hall & Co. took back the checks and agreed to pay defendants the amounts for which they called, though in fact they never did make such payment.

The case then stands thus: Plaintiff never received the checks as payment; the checks in fact were not drawn against a deposit in bank, and were therefore no appropriation of funds; there is no question between indorser and indorsee; the drawer received back the checks, and promised to pay the sums named therein, and at the time they were able to make good their promise. Under these circumstances, if defendants delayed insisting upon payment till the drawers failed, they must bear the loss, and the plaintiff, who never received the checks as payment and who returned them as soon as they were dishonored, is entitled to recover for his debt. (*Kinyon v. Stanton*, 44 Wis. 479.)

The judgment will be affirmed.

All the Justices concurring.