## THE PEOPLE'S STATE BANK OF MICHIGAN VALLEY
### v. G. W. BROWN.
#### No. 16,083.
##### SYLLABUS BY THE COURT.

1. SALES—*Right of Seller to Reclaim for Non-payment.* When a bargain is completed for the sale of specific personal property for cash, and delivery is made, if the buyer fails to pay the price promptly the seller has a right as between the parties or against an attaching creditor to reclaim the property, which is not lost by delay to assert it, unless an intention on his part is shown that the title should pass absolutely; and whether that is the case is ordinarily a question of fact to be determined in view of all the circumstances.

2. —————— *Payment by Check—Delay in Presentation—Waiver of Right to Reclaim.* In an action for conversion the evidence tended to show these facts: A farmer residing some miles from a town delivered wheat to a buyer there with the understanding that it was to be paid for at once; he received therefor a check on a local bank, which he took home with him, it being after banking hours; he did not present the check until his next trip to town, between two and three weeks later, when payment was refused; the buyer had no funds on deposit when the check was drawn, but had an arrangement with the bank under which it paid his checks and took bills of lading on the shipment of grain as security; a week after the issuance of the check the buyer became insolvent and the bank attached the wheat; after the dishonor of the check the seller sued the bank for the value of the wheat. *Held,* that his failure to make an earlier presentment of the check did not conclusively show a waiver of his right to reclaim the wheat.

Error from Osage district court; ROBERT C. HEIZER, judge. Opinion filed July 3, 1909. Affirmed.

*A. B. Crum,* and *O. B. Hartley,* for the plaintiff in error.

*J. H. Stavely,* and *F. A. Waddle,* for the defendant in error.

Bank v. Brown.

The opinion of the court was delivered by

MASON, J.: G. W. Brown sold and delivered some wheat to the Quenemo Mill and Elevator Company, and received therefor the company's check on the People's State Bank of Michigan Valley, situated in the same town. He carried the check home with him, a distance of some eight miles, having received it after banking hours. Between two and three weeks later he took the check to Ottawa, where he did his banking, this being the first time since receiving it that he had been to either town. The check was then in due course of business presented to the drawee for payment, which was refused. When it was drawn the elevator company had no funds on deposit, but had an arrangement with the bank by which its checks given for wheat were to be paid, the grain to be shipped and the bill of lading turned over to the bank. The bank paid checks under this arrangement as they were presented, until about August 28, when the company became insolvent and the practice was discontinued. The bank then sued the company and attached the wheat referred to, with other property. About September 19 Brown demanded of the bank either the payment of the check or the return of the wheat, and, receiving neither, on October 17 brought action against it for conversion. The plaintiff recovered judgment, and the defendant prosecutes error upon the sole ground that the evidence, the substance of which has been stated, showed conclusively that the title to the wheat had passed to the elevator company.

It was of course competent for Brown and the elevator company to make any agreement they saw fit as to when the absolute title to the wheat should pass, but in the absence of anything to indicate the contrary the transaction between them must be taken to have been the ordinary one of the sale of specific personal property for cash, delivery being made in the expectation of

immediate payment. (24 A. & E. Encycl. of L. 1095, note 10.) In such a case the failure of the buyer to pay the purchase-price authorizes the seller to reclaim the property. "Where the sale is for cash, payment, it is said, must precede the transfer of title." (24 A. & E. Encycl. of L. 1052. See notes to the paragraph from which the sentence quoted is taken, including those found in the supplements.) In these notes cases are cited having a contrary tendency, but so far as they are irreconcilable with the proposition stated they are out of harmony with what is now the established doctrine on the subject. It is true that as a matter of theory a consistent and logical argument can be made to support the view which is thus expressed in a recent text-book:

"If after bargaining for a cash sale the seller subsequently, voluntarily, delivers to the buyer the goods with the intent that the buyer may immediately use them as his own [*i. e.*, not for inspection or a similar purpose], and without insisting upon contemporaneous payment, this action is absolutely inconsistent with the original bargain. Such a delivery is not only evidence of the waiver of the condition of cash payment, it should be conclusive evidence." (Williston, Sales, § 346.)

But as a practical necessity, to avoid the inconvenience of requiring the seller of an article to keep one hand upon it until with the other he grasps the currency tendered in payment, there must be some relaxation of this rule. Delivery and payment as a practical matter can not be absolutely simultaneous. Some slight interval between the two acts is inevitable, and the criterion upon which the courts have agreed with substantial unanimity is that such interval does not conclusively prove a total abandonment of title and the right of possession by the seller unless under all the circumstances of the case it in fact shows that result to have been intended. Some ingenuity has been exercised, with doubtful profit, in defining the character of

the right remaining in the seller after a delivery and before payment, where there is no purpose to give credit. Whether it is more properly described as a lien, a retention of title, or an option to rescind the contract, is not very important so far as affects the solution of the problem presented here. It is a right of the seller to repossess himself of the goods if the buyer fails in the performance of the agreement on his part which was intended to be contemporaneous with the delivery. It is a peculiar right growing out of a peculiar situation, and it is not necessary to give it a name the use of which might seem to decide controversies growing out of other relations. This right has long been recognized in Kansas (*Daugherty v. Fowler,* 44 Kan. 628) and is now generally acknowledged elsewhere.

"It may be stated as a general rule, fully established by the cases, that, if goods are sold on condition to be performed immediately, and the vendor makes an actual delivery upon the faith that the condition will be immediately performed, and demands such performance with reasonable speed, and it is refused, no property in the goods passes to the purchaser, but that he simply holds them in trust for the vendor until such payment is made or waived." (120 Am. St. Rep. 869, note.)

The fact that Brown accepted a check did not imply an extension of credit or preclude the exercise of the right of reclamation in the case of its non-payment upon timely presentation. (*Hodgson v. Barrett,* 33 Ohio St. 63; *National Bank of Commerce v. Chicago, Burlington & N. R. Co.,* 44 Minn. 224; *Johnson-Brinkman Co. v. Central Bank,* 116 Mo. 558; *Hall & Robinson v. The Mo. Pac. Ry. Co.,* 50 Mo. App. 179; *Mathews et al. v. Cowan et al.,* 59 Ill. 341; *Canadian Bank v. McCrea et al.,* 106 Ill. 281; *P. & P. U. Ry. Co. v. Buckley et al.,* 114 Ill. 337; *Charleston Railway Co. v. Pope,* 122 Ga. 577.) The fact that the check might have been paid if it had reached the bank within a week from its

date did not convert its acceptance by Brown into a payment. That would have been the result if payment had been prevented by the failure of the bank in the meantime, but such effect follows only where loss is occasioned to the drawer. (22 A. & E. Encycl. of L. 572; *Mordis v. Kennedy,* 23 Kan. 408; *Brown v. Schintz,* 202 Ill. 509; *Manitoba Mortg. & Inv. Co. v. Weiss et al.,* 18 S. Dak. 459.) The elevator company had no funds in the bank, and therefore was not injured by the delay in the presentation of the check. The bank as an attaching creditor was not a purchaser in good faith and was entitled to none of the peculiar rights growing out of that relation. (13 L. R. A., n. s., 705, note.) On the other hand, it had the same standing as any other creditor: it had committed no wrong, and if the title to the wheat had actually passed absolutely to the elevator company there was no reason why it might not seize it to satisfy its claim against that company.

So far there is no room for a substantial difference of opinion. But the real question upon which the affirmance or reversal of the case must turn is this: Did the delay of Brown to present the check for between two and three weeks, as a matter of law, amount to a waiver—or afford conclusive proof of a waiver—of his right to reclaim the wheat, thereby causing the elevator company's title to become absolute? This question must be determined upon principles entirely different from those involved under similar circumstances where the rights of innocent purchasers have intervened. There the question presented is one of equitable estoppel, and delay is important as tending to mislead others to their prejudice. Here the question is one of evidence, and delay is important as tending to show an intention that title should pass. Equitable considerations are not involved. True, it seems but fair and just that the plaintiff should have either his wheat or his money, but the same would be true if he had sold

it on credit and the buyer had failed to pay at the promised time. In neither case could he maintain replevin if the title had actually passed from him.

It is said in the introduction to a note to *Will McIvor et al. v. Williamson-Halsell-Frazier Co.*, 19 Okla. 454, bearing upon the subject under consideration, in 13 L. R. A., n. s., 697:

"The authorities are agreed on the proposition that, as between the immediate parties to a cash sale, the title does not pass until payment, even though there is a delivery of the goods by the seller to the buyer, unless the circumstances of such delivery are such as to show an intentional waiver by the seller of payment as a condition precedent to the passing of title. This question is generally said to be one of fact, to be determined by a jury."

The cases are also collected and reviewed in notes in 120 Am. St. Rep. 868, and in 11 L. R. A., n. s., 948, in the latter of which it is said:

"The decisions upon this point depend largely upon the facts and circumstances of each case. The question is, Did the vendor act within a reasonable time to recover possession of the property—that is, within such a time as, taken in connection with other facts and circumstances, shows an intention to retain title until the condition of payment has been complied with?"

The case annotated (*Frech v. Lewis*, 218 Pa. St. 141) contains this strong statement of the requirement that the seller who wishes to assert the right of reclamation must act promptly:

"The settled doctrine of our cases is to the effect that where the contract of sale provides for payment of the purchase-price on delivery of the articles sold, and the seller delivers the goods but the buyer fails to pay, the right of property does not pass to the buyer with the possession, but remains with the seller, who may at his option reclaim the goods. In some jurisdictions the right of property is held to pass with the delivery, unless at the time the right to retake is expressly declared by the seller. We have not gone so far. Our cases proceed on the theory that until payment has

been made, or waived, the contract remains executory, and that delivery in such case is not a completion of the contract, except as an intention to so regard it is expressly declared or can fairly be inferred from the circumstances attending. Possession, however, having passed, and the buyer by the act of the seller having been invested with the indicia of ownership, the policy of our law requires that this situation—the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right in such case to reclaim his goods, but he must do so promptly, otherwise he will be held to have waived his right, and can only thereafter look to the buyer for the price. The only question the present case suggests is, When does this inference of waiver arise? Our authorities admit of but one answer: except when delayed by trick or artifice, the assertion of the right to reclaim the property must follow immediately upon the buyer's default. This does not mean that the seller must *eo instanti* begin legal proceedings to recover the goods; but it does mean that the seller, when he discovers that his delivery is not followed by payment as he had the right to expect, is at once put to his election whether he will waive the condition as to payment and allow the delivery to become absolute, or retake property, and that he is to allow no unnecessary delay in making his choice. The object of the law is not to multiply his remedies because of his disappointment. He may not continue to hold his right to the goods, but at the same time hold the buyer as his creditor; one or the other he must relinquish, and do it promptly, or the law will forfeit his right to elect. Continued acquiescence in the buyer's possession of the goods will be taken as a choice on his part to regard the delivery as absolute, notwithstanding the buyer's default. The policy of the law in requiring promptitude in the assertion of continued ownership of the goods could easily be vindicated were it necessary. It answers every purpose here to show that the law requires it. . . . These cases and others that might be cited, following the lead of *Leedom v. Phillips*, 1 Yeates, 527, all hold that the duty is upon the seller if he would retain his right to the property to proceed promptly, and we know of no case in which a contrary doctrine is asserted. In some

cases the expression 'within a reasonable time' is used where the right to reclaim is referred to; but this expression suggests no departure from the rule as declared in *Leedom v. Phillips, supra.*    By reasonable time is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow.    It never means an indulgence in unnecessary delay, or in a delay occasioned by the vain hope and fruitless effort to obtain the money from the defaulting buyer.    When the delay is to be accounted for by the latter consideration, it is accepted as an acquiescence in the delivery and the acceptance of the buyer as a debtor." (Pages 142-144.)

This language is applicable to the facts here presented only so far as in a general way it argues the necessity of prompt action, for the giving of the check introduces a new element, and the situation does not arise of the vendee's failure to keep his agreement to pay being necessarily brought at once to the attention of the vendor.    It illustrates, however, that the intention of the seller, although a question of fact, is determined by standards definitely fixed by law, one of them being that his conduct must be consistent throughout.    In that case the vendor delayed for two months and a half to assert title to the property sold, in the meantime making repeated efforts to collect the purchase-price.    In *Smith v. Dennie,* 23 Mass. 262, merchandise was sold with the understanding that the vendee was to give an indorsed note.    Delivery was made and the vendor neglected for eight days to demand the note.    Then a creditor of the vendee attached the property and the vendor replevined it.    The court held a verdict for the plaintiff in the replevin case to be against the evidence, saying:

"Eight days passed between the delivery of the goods and any call for the indorsed note, nor was any intimation made of the security to be given when the goods were delivered by the clerk, who does not appear to have been informed by the vendor of the terms of the sale.    The latter, however, must be presumed to have known the next day that they had been delivered, and

yet he did not send for the note or give any manner of notice that it was required until the attachment took place eight days after the sale. We are apprehensive that to establish the right to reclaim under such circumstances would widen the door for fraudulent contrivances, and that afterthoughts respecting conditions will spring up to intercept attaching creditors when the sale was really unconditional, or at least when the vendor had thought his condition of so little importance as to be willing to abandon it and trust to the credit of the purchaser.

"We are of opinion that the verdict is against the evidence, for there was nothing in the case from which an intention to hold on upon the condition can be inferred; no declaration at the time, which though not necessary is important, and no call for security until it was forgotten or abandoned, and perhaps never would have been recurred to if the goods had not been attached." (Page 267.)

But in the opinion it was also said:

"The vendor certainly had a right the day after to insist upon his indorsed note or to rescind the bargain and reclaim the goods. If so, why not two days or three, and if so, the time which elapses is a mere fact, from which the jury may infer the intention. Circumstances of business and engagement may account for the delay, and, if they do, the right to security or to reclaim the goods, unless sold as before mentioned, is not impaired." (Page 266.)

To say that the seller is required to reclaim his goods immediately, or as soon as possible, or even without any unnecessary delay, would be to overstep the rule derivable from the authorities. The requirement is that he must act with reasonable promptness. In *Daugherty v. Fowler*, 44 Kan. 628, this was the test proposed. In *Paulson v. Lyon*, 26 Utah, 438, a delay of over a month was held not to be fatal.

With a single exception the checks the non-payment of which gave rise to the litigation in the cases already referred to were presented with absolute promptness, so that the question here involved did not arise. The exceptional case is *Hodgson v. Barrett*, 33 Ohio St. 63.

There a barge of coal was sold and delivered, the transaction taking place at Cincinnati, where the vendors, who were residents of Pittsburg, were represented by agents. A check on a Cincinnati bank was given to the agents, who sent it to their principals at Pittsburg, where it was banked, reaching Cincinnati four days later and being dishonored. In the meantime the vendees, whose deposit was less than the amount of the check when it was drawn, had failed, and the coal had been levied upon by their creditors. The vendors brought replevin for it, and were sustained in their action, the court saying:

"No such delay is shown as would manifest an election not to rescind; nor does it appear that Haubold & Son [the vendors] were in any way injured thereby. It ought not, therefore, to affect the right of plaintiffs to treat the supposed payment by check as a nullity, and wholly to avoid the contract of sale." (Page 69.)

It will be observed that there the check was not presented within what would have been regarded as a reasonable time had the question been one of holding a drawer who had suffered a loss by the delay. Having been received in Cincinnati, where the bank on which it was drawn was situated, due diligence for that purpose required its presentation not later than the next business day. (7 Cyc. 978, 979; 5 A. & E. Encycl. of L. 1042.) But the delay was not conclusive upon the question of the passing of title to the coal, because it was accounted for by the situation of the parties. Here the delay was considerably greater, but was explained by circumstances which naturally account for it without the necessity of supposing that the plaintiff intended to waive the right to reclaim his wheat. Long as the interval was between the making of the check and its presentation, Brown deposited it for collection at the first opportunity he had to attend to the matter in person, without making a trip to town for that very purpose. To say that to preserve his right of reclama-

34—80 KAN.

tion it was necessary for him to present the check not later than the day after he received it would be to establish too rigorous a rule. And after passing that limit there seems to be no place where a hard-and-fast line can be drawn dividing reasonable and permissible delay from that which is unreasonable and prohibited. If the failure to make an earlier presentation did not bar him, his subsequent conduct did not have that effect, for within a short time after learning of the failure of the drawer he claimed ownership of the wheat, and although he did not bring his action at once. he never thereafter ceased to assert his right to do so.

We think under the authorities it was a question of fact whether under all the circumstances his intention was that the absolute title to the wheat should pass to the elevator company, and the decision of the trial court can not be disturbed on review. The judgment is affirmed.