No. 44,646

RHODA D. LOUCKS, *Appellant*, v. ETHEL K. McCORMICK, and P. S. McCORMICK, *Appellees*.

(424 P. 2d 555)

Opinion filed March 4, 1967.

*Dale E. Saffels,* of Garden City, argued the cause, and *A. M. Fleming, Lloyd H. Haag* and *Clifford R. Hope, Jr.,* all of Garden City, were with him on the briefs for the appellant.

*Logan N. Green,* of Garden City, argued the cause, and *Ray H. Calihan, Ray H. Calihan, Jr.* and *Daniel J. High,* all of Garden City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action to cancel a quitclaim deed alleged to have been obtained by fraud.

The facts leading up to the execution of the deed are not in dis-

pute. Although P. S. McCormick, the divorced husband of Ethel, is named as defendant, he did not participate in the transaction in controversy or the trial of the case, therefore we will refer to Ethel K. McCormick as the defendant and appellee. In 1938 Charles A. Loucks employed the defendant, Ethel K. McCormick, in his abstract business at Lakin, Kansas. The next year a partnership was formed to operate the abstract business and an insurance agency was also included. Charles A. Loucks owned a one-half interest in the partnership and Ethel K. McCormick and P. S. McCormick, her husband, each owned a one-fourth interest. The business was carried on by the McCormicks, Mr. Loucks acting only in an advisory capacity.

The partnership arrangement continued until Mr. Loucks' death December 28, 1960. He died testate naming his wife, Rhoda D. Loucks, as executrix. The will devised the property where the partnership office was located to the defendant and provided for division of the remaining partnership real estate as follows:

"It is my will and I direct that an inventory of all of such property be made and furnished to the Executor of my estate by my said surviving partners, and that all of such property be in lawful and orderly fashion converted into the form of cash, or by division in kind to my general estate for administration by my Executor and disposition under the terms and provisions of this will." (The property covered by the deed in dispute.)

Letters testamentary were issued to plaintiff on January 19, 1961, and on the same day the plaintiff gave the defendant a power of attorney. Under the power the defendant managed the business affairs of the estate which was of the approximate value of $1,000,-000. She collected monies, paid bills, both business and personal, and took care of the plaintiff's business affairs generally. The power of attorney did not extend to the sale and transfer of property. The plaintiff gave the power of attorney to the defendant because her husband, Charles A. Loucks, had said she was capable and because the defendant had transacted Mr. Loucks' business for many years. Neither the plaintiff nor her husband, Charles A. Loucks, had any known relatives.

On November 16, 1961, the plaintiff executed two deeds to the defendant, one covering the business building which was devised to defendant by the will, and one covering a small parcel of land immediately west of the business property which defendant purchased from the estate. The plaintiff read the deeds conveying the

above mentioned property, signed them and acknowledged them before a notary public. These conveyances are not in dispute.

On December 1, 1961, the plaintiff executed a quitclaim deed conveying to the defendant and her ex-husband, P. S. McCormick—the parties having been divorced—plaintiff's one-half interest in the partnership property. The record does not disclose the value of the one-half interest but plaintiff alleged it to be in excess of $75,000. At the time the quitclaim deed was executed the plaintiff's eyesight was impaired and she was in the habit of signing instruments brought to her by the defendant without reading them. She could, however, ascertain the general tenor and import of a document if she made an effort to do so. The plaintiff was 88 years of age but of sound mind.

Although the quitclaim deed showed an acknowledgment and was duly recorded, the plaintiff did not appear before the notary acknowledging the instrument or have contact with the notary in any way.

The friendly relationship between the plaintiff and defendant continued until the latter part of the year 1964, when an old friend of the Loucks family began to cast aspersions on defendant's financial integrity. In the early part of 1965 the power of attorney given defendant was cancelled and a similar one given to the family friend. The petition was filed to cancel the quitclaim deed March 17, 1965.

The petition, after setting forth the formal allegations, stated the quitclaim deed was obtained from the plaintiff by fraud while the defendant was in a confidential relationship. The plaintiff had no knowledge of the execution of the deed until February 8, 1965. It was the habit of plaintiff to sign such instruments as defendant brought to her without question because of her trust and confidence. The petition concluded:

"That the plaintiff did not know of the existence of said deed and the perpetration of said fraud until on or about the 8th day of February, 1965, whereupon plaintiff immediately consulted her attorney; that subsequent to said February 8, 1965, plaintiff demanded that said property be deeded back to plaintiff, which defendants refused to do and still so refuse.

"That said property is of the reasonable value in excess of $75,000.00 and said instrument is void for the further reason that it is without consideration.

"That by reason of the fraud of defendants, plaintiff has been deprived of her title to said property, and will be wholly deprived of the use, possession and title thereof unless said deed is cancelled."

The prayer was for cancellation of the instrument.

It will be noted that at no place in the petition is there a suggestion of undue influence or persuasion.

The answer denied that the deed was signed by plaintiff without her knowledge and consent and stated:

". . . Further said defendants allege and state that on or about the 1st day of December, 1961, the defendant, Ethel K. McCormick approached the plaintiff with the intention of dividing the property described in plaintiff's petition in accordance with the expressed wishes of the decedent, Charles A. Loucks, as expressed in his Last Will and Testament. She conferred with said plaintiff in this regard and during said conversation the plaintiff stated to her that she had greatly assisted in the acquisition of said property; that she, the plaintiff, had no heirs to whom to leave said real property and that she desired to make a gift of her share of said real property to the defendant, Ethel K. McCormick and further suggested that she give the same jointly to the said Ethel K. McCormick and P. S. McCormick, her former husband, who had done various favors to plaintiff and her husband throughout the years and in pursuance of such conversation the plaintiff voluntarily and entirely at her own suggestion executed the deed mentioned in plaintiff's petition; that thereafter the defendant, Ethel K. McCormick paid the gift tax due upon said transaction and placed said deed of record."

In addition to the undisputed facts heretofore stated the plaintiff testified:

"Q. Did you ever intend to convey this partnership land to Ethel and Pete McCormick?

"A. No, indeed.

"Q. And if your signature does appear on here, which it does, what is your testimony as to what your intent was as to this deed?

"A. If I signed that, it wasn't to my knowledge.

"Q. You did not intend to convey this?

"A. I did not."

The trial court saw fit to believe the defendant, who testified:

"Q. How about the balance of the partnership property; what was your conversation about that?

"A. She wanted Pete and I to have it, and I drew up a quitclaim deed covering it.

"Q. You talked about it and she said she wanted you to have it and then you went back and prepared a deed, is that correct?

"A. Yes, it took me considerable time to prepare it.

"Q. That deed is dated December 1, 1961; did you take that to Mrs. Loucks' house to get her signature on it?

"A. Yes, sir.

"Q. Was anyone there beside you and Mrs. Loucks?

"A. No, sir, Mrs. Loucks never wanted anyone there. She didn't want to discuss business if anyone else was there.

"Q. When you went in what was said between you, if you remember?

"A. Well, I went up there about 1:00 o'clock and it was almost 3:00 before I left, and she read that over very carefully and we discussed the location of where it was. . . .

"Q. You say you handed her the deed and she read it through?

"A. Yes, sir.

"Q. Did you have any other papers with you?

"A. No, sir.

"Q. When she got through reading it she signed it?

"A. Yes, sir.

"Q. What happened then; where did you go?

"A. I asked her is she wanted to go down to the bank to have it acknowledged. As a usual rule when she signed the papers that needed to be acknowledged, I am a notary and I would acknowledge them for her, but she wasn't dressed and she didn't want to go down and I told her she could call Mrs. Warthen at the bank, that I would take it down there to be acknowledged, and it was almost 3:00 o'clock at that time.

"Q. And so you did go down to the bank with the deed?

"A. Yes, sir.

"Q. Did Mrs.Warthen acknowledge it?

"A. Yes, sir."

Mrs. Warthen testified that the plaintiff did not call her about the acknowledgment.

The trial judge made findings in harmony with the facts summarized herein and in addition found that:

"The plaintiff, Rhoda D. Loucks, did not receive or seek any independent advice as to the gift in question. The gift was not solicited by the defendants and the defendants exercised no undue influence upon the plaintiff, Rhoda D. Loucks, to cause the gift to be made. The gift was voluntarily and knowingly made by the plaintiff to the defendants with donative intent."

The trial judge concluded that a confidential relationship existed between the plaintiff and the defendant, the burden of proof was upon the defendants to prove that the deed was knowingly executed with the intention of making a gift, and that—

"After considering all of the evidence, and particularly the demeanor and manner of testifying of the two vital witnesses and their candor, and in some instances lack of candor, the Court concludes that the testimony of the defendant, Ethel K. McCormick, is true and that the defendants have sustained the burden of proof that the deed was voluntarily and knowingly made with donative intent."

Other conclusions of the trial court will be considered as we review the contentions of plaintiff raised in her appeal.

We must proceed to unravel appellant's legal contentions with

some caution or we will become ensnared in a web of inappropriate legal theories not applicable to the issues as framed in the case. We will first consider appellant's contention that the trial court erred in concluding that her claim was based upon actual rather than constructive fraud. On this point the trial court concluded:

". . . Plaintiff does not claim that the defendant, Ethel K. McCormick, talked her into deeding the land involved or that pressure, persuasion or undue influence was used to cause her to make the deed. Instead, she claims that there was never any discussion about the making of such a deed and that if she signed the deed it was because she was tricked by being informed that the deed was something else. Plaintiff's claim is based upon actual fraud instead of constructive fraud. In addition, the Court is convinced from plaintiff's testimony, her demeanor and manner of testifying, that despite her age she is a very strongminded person and that it is most unlikely for her to have been unduly influenced or subjected to any pressure or persuasion to execute the deed. She either signed the deed of her own free will intending to make a gift, as claimed by the defendants, or she was tricked into it by being informed it was something else she was signing. . . ."

We are inclined to agree with the trial court that appellant's petition alleged actual fraud and her testimony, if believed, would have established only actual fraud. Appellant's entire case is based upon the theory that appellee intentionally tricked her into signing an instrument which she did not intend to sign by leading her to believe she was signing something else.

Actual fraud is an intentional fraud and the intent to deceive is an essential element thereof. Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence and neither actual dishonesty of purpose or intent to deceive is necessary. (37 C. J. S., Fraud, § 2; 23 Am. Jur., Fraud and Deceit, § 4.)

This court has recognized the following distinction between actual and constructive fraud:

" 'Fraud, in the sense of a court of equity, properly includes all facts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' (1 Story, Eq. Jur., § 187.)

" 'Constructive fraud consists in any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence.' (Black, Law

Dict., § 517.)" (*City of Clay Center v. Myers*, 52 Kan. 363, 365, 35 Pac. 25.)

Black's Law Dictionary defines actual fraud:

". . . Actual fraud consists in conceit, artifice, trick, design, some direct and active operation of the mind; . . ."

Under appellant's allegations and proof, if she were cheated it had to be by some artifice or trick resulting in actual fraud.

The appellant contends the trial court erred in concluding that the doctrine of independent advice had no application to the controversy.

The trial court concluded on this issue:

". . . In addition, although the plaintiff is old and perhaps was handicapped by impaired sight and health, she makes no claim of undue influence and in the Court's judgment is and was at the time of giving of the deed sufficiently strong-minded to have resisted any such influence. The Court concludes that the doctrine of independent advice has no application here."

We are inclined to agree with the conclusion of the trial court.

We adhere to the rule that where a substantial gift is made by a person of weak or infirm mind to a person in a confidential relationship, undue influence amounting to constructive fraud will be presumed and the donee can only be freed of the presumption by satisfactory proof that the donor had independent advice. (*Flintjer v. Rehm*, 120 Kan. 13, 241 Pac. 1087; *Madden v. Glathart*, 125 Kan. 466, 265 Pac. 42; *Jernberg v. Evangelical Lutheran Home for the Aged*, 156 Kan. 167, 131 P. 2d 691.)

However, in this case the appellant makes no contention either in her pleading or proof that she was in any way influenced or persuaded to sign the quitclaim deed because of a confidential relationship. She rather contends that she was defrauded through artifice or trickery. A confidential relationship that had no influence on the transaction in question furnishes no ground for relief, neither does it invoke the doctrine of independent advice.

Undue influence must be specifically pleaded. (*Brazee v. Morris*, 68 Ariz. 224, 204 P. 2d 475.) In 25 Am. Jur. 2d, § 42, p. 403, the general rule is stated:

"Although undue influence is regarded by some courts as a species of fraud, it must be treated, for pleading purposes, as undue influence, and a plea of fraud will not ordinarily raise the issue of undue influence."

The appellant contends the trial court's finding that the gift was voluntarily and knowingly made by the plaintiff to the defendants with donative intent is contrary to the evidence. We cannot agree. The court considered the testimony of the two vital witnesses, the appellant and the appellee, gave attention to their demeanor and candor "and in some instances lack of candor," and decided that the appellee was telling the truth. We have consistently held that the appellate court is not concerned with the credibility of witnesses or the weight of their testimony, and the trier of facts, not the court of appellate review, has the responsibility of determining what testimony should be believed. (*State v. Shaw*, 195 Kan. 677, 408 P. 2d 650; *Kramer v. Farmers Elevator Co.*, 193 Kan. 438, 393 P. 2d 998; *White v. Rapid Transit Lines, Inc.*, 192 Kan. 802, 391 P. 2d 148; *Stumfoll v. Inman*, 188 Kan. 553, 363 P. 2d 443.)

The appellant has challenged numerous findings of the trial court as not supported by the evidence. Space will not permit us to give them individual attention. We have examined the evidentiary findings of the trial court which were ancillary to its conclusory finding and we have discovered no error prejudicial to the rights of the appellant.

In view of the determination reached in the case on the merits, the question of the statute of limitations raised by appellee in her cross-appeal is no longer a material issue.

A careful consideration of the record discloses no error which would require the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.