**HOLIDAY RAMBLER CORPORATION,**
**Plaintiff-Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST**
**COMPANY OF GREAT BEND,**
**KANSAS, Defendant-Appellee.**

No. 81–2480.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1983.

William A. Wells of Gott, Young & Bogle, P.A., Wichita, Kan., for plaintiff-appellant.

Ken M. Peterson, Wichita, Kan. (William B. Sorensen, Jr., Wichita, Kan., with him on brief) of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for defendant-appellee.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Holiday Rambler Corporation, a manufacturer of recreational vehicles, brought this diversity action against the First National Bank and Trust Company of Great Bend, Kansas. It alleged that First National had wrongfully diverted funds owed to Holiday Rambler by one of its dealers, Kansas Kamper Center, Inc. The district court granted summary judgment for First National, from which Holiday Rambler now appeals.[1] We affirm.

## I.

## BACKGROUND

When reviewing a district court's summary judgment, we consider the record in the light most favorable to the party opposing the motion, *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and all ambiguities and disagreements must be resolved in its favor. *Security National Bank v. Belleville Livestock Commission Co.,* 619 F.2d 840, 847 (10th Cir.1979); *Webb v. Allstate Life Insurance Co.,* 536 F.2d 336, 339–40 (10th Cir. 1976). Viewed in this way, the record reveals the following.

Kansas Kamper engaged in the retail sales and service of recreational vehicles and mobile homes. In June 1978, when John R. Morris purchased control of Kansas Kamper, Holiday Rambler conducted a thorough investigation to determine the dealership's credit-worthiness under the new ownership. As a result of that investigation, Holiday Rambler concluded that the dealership's financial condition was "poor." Nevertheless, Holiday Rambler decided to continue to sell campers to Kansas Kamper on a cash-on-delivery (c.o.d.) basis, even though the manufacturer could have insisted upon the economically-safer "floor-plan" basis.[2] Holiday Rambler further elected to accept as payment Kansas Kamper's company checks rather than insisting upon cash, certified check, or bank money order.

In February and March of 1979, Holiday Rambler delivered four campers to Kansas Kamper, accepting in payment four uncertified company checks drawn on the dealer's checking account at First National. Shortly after each sale, Kansas Kamper went to First National to obtain loans, using the campers as collateral. The bank credited Kansas Kamper's checking account with amounts equal to 90 per cent of the camper's invoice price, in exchange for notes and security agreements covering each of the

---

1. John R. Morris, the president of Kansas Kamper, and Kansas Kamper Center, Inc. were also included as defendants. The district court certified the summary judgment in favor of First National as final under Fed.R.Civ.P. 54(b). Consequently, we are presented on appeal only with Holiday Rambler's claims against First National.

2. There is a considerable difference between a c.o.d. and a "floor plan" method of payment. The difference was explained by Holiday Rambler's Vice President of Dealer Finance:

   "In a c.o.d. dealership, the dealership issues a check directly to Holiday Rambler Corporation or our agent in payment of that unit, at which point the m.s.o.'s [manufacturer's statements of origin] are passed to the dealership upon our receipt of that, in the form of a check or cash, certified funds, et cetera.

   "In the case of a floor plan, we contact— approximately one week prior to production we contact the lender, secure an approval from the lender to pay for that unit through the floor plan funds that have been extended to the dealership, to reserve x number of dollars for that unit. The certificate of origin and the original invoice copy is sent directly to the lender on the day of invoicing after the unit has been completed. The lender then issues a check to Holiday Rambler Corporation in payment of that unit. They then perfect their own security documents with the dealer, depending on the arrangement with the dealership, whether that be individual trust receipts, et cetera. That is the bank's business."

   Rec., vol. VII, at 35–36.

campers. When Holiday Rambler presented its Kansas Kamper checks for payment, however, the Kansas Kamper account had insufficient funds and the checks were dishonored. Between the time of the loans to Kansas Kamper and Holiday Rambler's presentment of its checks for payment, Kansas Kamper had issued checks to the bank at its request to pay some outstanding obligations that Kansas Kamper owed to the bank, leaving insufficient funds to cover Holiday Rambler's checks.

Rather than immediately attempting to reclaim the campers, or taking steps to perfect its security interests in the vehicles, Holiday Rambler instead chose to rely on representations by Morris that the checks would be made good. The manufacturer ran the checks through the bank a second time, and again the checks were dishonored. In May 1979, Kansas Kamper filed for bankruptcy, by which time it had sold three of the campers to customers in the ordinary course of business. It used the proceeds from those sales to cancel the notes and security agreements previously executed with the bank. The fourth camper remained in Kansas Kamper's possession at the time of its bankruptcy petition; it was later sold at the bankruptcy court's direction. To date, Holiday Rambler remains unpaid for the four vehicles.

Holiday Rambler brought this action against First National for damages equal to the value of the four dishonored checks, plus incidentals. The issues before the court in the summary judgment proceedings were whether under Article Two of the Kansas Uniform Commercial Code Holiday Rambler maintained a right to reclaim the campers as a cash seller with priority over any interest held by First National, and whether First National's security interests were invalid because they were created fraudulently.

The district court concluded as a matter of law that the bank had valid, perfected security interests in the campers that took priority over Holiday Rambler's asserted claim to the vehicles. The court then rejected plaintiff's remaining fraud claim, concluding that First National had collected a legitimate debt from Kansas Kamper which depleted Kansas Kamper's account to the point that it could not pay Holiday Rambler.

On appeal, Holiday Rambler cites as error the district court's determination that the company had lost its right to reclaim, and the court's resolution of the fraud claim. It also contends that it had a breach of contract claim against First National that should have been addressed.

## II.

### CASH SELLER'S RIGHT TO RECLAIM GOODS

Holiday Rambler asserts the district court erred in determining that the company had lost its right to reclaim the campers. In a sale of goods, the buyer's right to retain or dispose of goods is conditional upon the seller's right of reclamation. *See* Kansas Comment 1983 to Kan.U.C.C.Ann. § 84–2–507 (Ensley 1983). As long as Holiday Rambler retained a right to reclaim the vehicles, Kansas Kamper could not give First National enforceable security interests because a security interest cannot attach or become enforceable until the debtor has rights in the collateral. Kan.U.C.C. Ann. § 84–9–203(1)(c).

When a seller discovers that a buyer has received goods on credit while insolvent, the seller may reclaim the goods upon demand made within ten days after the buyer's receipt of the goods. Kan.U.C.C.Ann. § 84–2–702. Although the Code has no specific provision for cash sellers, Kan.U.C.C.Ann. §§ 84–2–507(2), Official Comment 3 to 84–2–507, and 84–2–511(3), when read together, provide a right to reclaim for sellers who accept checks that are subsequently dishonored. *See* Kansas Comment 1983 to § 84–2–507; *see also, e.g., Szabo v. Vinton Motors, Inc.,* 630 F.2d 1, 3 (1st Cir.1980); *In re Helms Veneer Corp.,* 287 F.Supp. 840 (W.D. Va.1968).

Thus, section 84–2–507(2) states:

"Where payment is due and demanded on the delivery to the buyer of goods ..., his right as against the seller to retain or

dispose of them is conditional upon his making the payment due."

Section 84–2–511(3) states that "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." Taken together, these sections provide that a seller of goods who receives in payment a check that is subsequently dishonored has a right to reclaim the goods from the buyer. As long as the seller retains this right to reclaim, the buyer's right to title in the goods is subject to it. However, a seller does not retain its right to reclaim indefinitely. Official Comment 3 to § 84–2–507 provides:

"Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's 'right as against the seller' conditional upon payment .... *Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived.* The provision of this Article for a ten-day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here." (emphasis supplied.)

If a seller fails to "follow up his rights," he loses his right to reclaim. The sale to the buyer is then no longer conditional, and the buyer can sell or give a security interest in the goods to a subsequent purchaser free of any retained right in the seller to reclaim them. The question in this case is whether Holiday Rambler failed to follow up its rights.

It is undisputed that Holiday Rambler made no effort to repossess the four vehicles for two to three months after delivery. However, Holiday Rambler argues that, under Kansas law, "whether a cash seller of merchandise [has] waived his rights as a cash seller [is] a factual question to be resolved by a jury." Brief of Appellant at 14. First National, on the other hand, argues that a cash seller's right to reclaim is waived as a matter of law if not exercised within ten days of delivery. Cases can be found in various jurisdictions to support both positions. *Compare Szabo,* 630 F.2d at 3; *Helms,* 287 F.Supp. at 846; *Stowers v. Mahon (In re Samuels),* 526 F.2d 1238, 1245 (5th Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct.

98, 50 L.Ed.2d 99 (1976), *with Burk v. Emmick,* 637 F.2d 1172, 1176 (8th Cir.1980). In determining the applicable law in this diversity case, however, we are bound to follow what we determine to be the law of Kansas.

Holiday Rambler relies heavily on an old Kansas Supreme Court case, *People's State Bank v. Brown,* 80 Kan. 520, 103 P. 102 (1909). *Brown* held that whether a seller has waived his right to reclaim is determined by whether he acted "within a reasonable time" to recover possession of the property. *Id.,* 103 P. at 104. Holiday Rambler further argues that the subsequent adoption of the Uniform Commercial Code in Kansas did not affect the holding in *Brown,* relying primarily upon the fact that the Kansas Comment following § 84–2–511 at one time cited *Brown* with approval. *See* Kan.U.C.C.Ann. § 84–2–511, Kansas Comment (Weeks 1965). Whatever view of the law the Kansas Legislature may have had at the time of those comments, that view apparently has changed. The Kansas Comment 1983 to § 84–2–511 no longer cites *Brown,* but rather refers the reader to its 1983 comments to § 84–2–507 for the law respecting a cash seller's right of reclamation. In this latter comment, the Kansas Legislature declares:

"Subsection (2) [§ 84–2–507(2)] makes clear that the buyer's rights as against the seller are conditional upon payment. Many courts have fashioned a seller's right of reclamation in bad check cases out of this subsection by reading it together with 84–2–511(3). Most such courts have imposed a 10-day limitation on this right, borrowing from 84–2–702. Official UCC Comment 3 to this section supports this. For illustrative cases, see *In re Helms Veneer Corp.,* 287 F.Supp. 840 (W.D.Va.1968); *Szabo v. Vinton Motors, Inc.,* 630 F.2d 1 (1st Cir.1980)."

Kan.U.C.C.Ann. § 84–2–507, Kansas Comment 1983.

It is thus apparent that Kansas has adopted the ten-day limitation on a cash seller's right to reclaim. We need not decide whether the ten-day period begins to

run from the date of delivery or from the day a seller first receives notice that his check has been dishonored, for in this case Holiday Rambler failed to repossess within either period. Holiday Rambler therefore waived its right to reclaim and Kansas Kamper acquired full rights in the goods. Consequently, First National's security interest in the goods must prevail unless there is merit to Holiday Rambler's claim that the security interest was fraudulently obtained.

### III.

### FRAUD

■ We agree with the district court that the facts alleged by Holiday Rambler do not constitute fraud under Kansas law. First, no fraudulent representation is alleged to have been made by First National. Second, even though a line of cases exists in Kansas that seems to recognize the possibility of actual fraud even absent an express representation, *see, e.g., Citizens State Bank v. Gilmore*, 226 Kan. 662, 603 P.2d 605, 610 (1979); *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555, 560 (1967); *Smith v. Bridgeport Machine Co.*, 151 Kan. 444, 100 P.2d 65, 66 (1940); *Eureka Bank v. Bay*, 90 Kan. 506, 135 P. 584, 585 (1913), the acts by First National in this case do not amount to fraud under the theory of those cases. The cases look to all the surrounding facts and circumstances to see if there exists some "artifice, trick [or] design," *Loucks*, 424 P.2d at 560, or "an act of deception or cunning intentionally and effectively used to cheat a person of his rights." *Smith*, 100 P.2d at 66.

> "A general rule supported by many cases is that a person engaged in a business transaction with another can commit a legal fraud only by ... such ... conduct or artifice ... as will *mislead the other*

party or throw him off his guard and thus cause him to omit inquiry or examination which he would otherwise make." 37 Am.Jur.2d *Fraud and Deceit*, § 224 (1968) (emphasis supplied).

Holiday Rambler has not alleged that, by act, artifice, trick, or any other fraudulent device, First National induced Holiday Rambler to accept uncertified checks from Kansas Kamper as payment for its campers. Holiday Rambler does not claim that First National caused its failure to exercise its right to reclaim or to perfect its security interests in the campers after it learned its checks had been dishonored. Indeed, Holiday Rambler's fraud allegations amount to nothing more than the assertion that the bank loaned money, reserved a security interest, and accepted Kansas Kamper checks to offset existing debts, *when it knew* the goods upon which the security interests were based had not yet been paid for.

Holiday Rambler cites no authority for the proposition that mere knowledge that goods are unpaid for invalidates an otherwise legitimate security interest.[3] The Code does not inquire into such knowledge on the part of a secured party. See Kan.U. C.C.Ann. § 84–9–203, 84–9–312(5), and Kansas Comment 1983 to 84–9–312, subsection (5) ("The first-to-file-or-perfect rule is based upon the 'pure race' concept; knowledge is irrelevant"). Rather, if properly employed, the Code protects unpaid sellers in a variety of other ways. *See, e.g.,* Kan. U.C.C.Ann. §§ 84–2–507, 84–2–702, 84–9–113, 84–9–201, 84–9–203, 84–9–301, 84–9–302, 84–9–312, 84–9–401, 84–9–501. Holiday Rambler simply failed to avail itself of the protections provided by the Code and by commonly-known commercial practice. Accordingly, we affirm the district court on this issue.

**3.** Kansas also recognizes a cause of action for constructive fraud. *See, e.g., Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555, 559–60 (1967). However, Holiday Rambler failed to plead this below. Only now, on appeal, does it argue that the bank owed Holiday Rambler an independent duty of disclosure, and that a fiduciary relationship was created because of the guaranty agreement between them. *See* Brief of Appellant at 20, 21. "It is the general rule,

of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *accord, Neu v. Grant*, 548 F.2d 281, 287 (10th Cir.1977); *United States v. Immordino*, 534 F.2d 1378, 1381 (10th Cir.1976). Accordingly, we do not consider Holiday Rambler's arguments on this issue.

## IV.

### BREACH OF CONTRACT

■ Holiday Rambler argues on appeal that it has a breach of contract claim arising out of a guaranty agreement it had with First National. The agreement provided that in consideration of First National "extending a wholesale line of credit for the express purpose of enabling" Kansas Kamper to purchase new Holiday Rambler recreational vehicles, Holiday Rambler would guarantee repurchase of the vehicles at 90% of their wholesale value in the event that Kansas Kamper defaulted on its payments to the bank. Rec., vol. I, at 20–22. The bank was to obtain a promissory note and a security interest in each recreational vehicle financed, and was required to extend wholesale credit to the dealer equal to 100% of the wholesale invoice price. *Id.* Holiday Rambler argues primarily that because First National extended credit equal only to 90% of the wholesale invoice price, Holiday Rambler has a claim against the bank under the contract if it can show that it was damaged. First National responds that the guaranty was clearly for the benefit of the bank and that its admitted failure to loan Kansas Kamper 100% of the price only precludes the bank from enforcing the guaranty against Holiday Rambler. More importantly, however, the bank contends that this breach of contract claim is not properly raised on appeal because Holiday Rambler never presented the claim below.[4] We agree.

Holiday Rambler did not allege a breach of contract claim in its complaint. In the pretrial conference order, Holiday Rambler stated as a fact issue, "[w]hether First National failed to extend credit to Kansas Kamper in the amount of one hundred percent of the wholesale invoice price as per its prior agreement." Rec., vol. I, at 28. But Holiday Rambler failed to state in the pretrial order an issue of law relating to this fact question, *i.e.,* that such failure allegedly constituted a breach of the guaranty contract. Moreover, when First National moved for summary judgment, neither party suggested the existence of a breach of contract claim. As Holiday Rambler itself admits, "[i]t appears that these claims were simply overlooked in the briefs and arguments of counsel because novel issues of law were not involved." Brief of Appellant at 26. As a result, the district judge never had an opportunity to pass on the contract claim. Because Holiday Rambler neglected to raise the contract claim during the summary judgment proceedings, it therefore failed to establish this claim as a ground for precluding the entry of summary judgment. *See* Fed.R.Civ.P. 56(c), (e).

AFFIRMED.

---

4. Holiday Rambler asserts on appeal three other breach of contract claims arising out of the guaranty agreement: failure to provide it notice of the amount of credit extended to Kansas Kamper, failure to provide it ten days' advance notice of repossession of units, and failure to ensure that the proceeds advanced Kansas Kamper were used to pay Holiday Rambler. These claims were not even arguably presented below and we will not address them here. *See* note 3 *supra.*