[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By way of a revised complaint filed on April 4, 1994, the plaintiff Industrial Paper Shredder Inc. ("Industrial") claims that the defendant Center Capital Corporation ("Center") purchased for the defendant's lessee Dependable Roll Off Trucking, Inc. ("Dependable"), a model 20 paper shredder machine ("shredder") from the plaintiff. The plaintiff alleges that the shredder was shipped to the defendant's lessee and the defendant has not paid for it. Attached to the plaintiff Industrial's revised complaint is defendant Center's purchase order and plaintiff's invoice.
The defendant denies that it ordered the shredder, although it admits being invoiced by Industrial. By way of special defenses, the defendant alleges the following:
 1. The plaintiff entered into an agreement with another party to sell the [shredder] and shipped and delivered said [shredder] before receiving any purchase order or other instructions from the Defendant and without relying upon any agreement or promise made by the Defendant.
 2. The plaintiff did not comply with the terms of its bill of lading, which called for a C.O.D. shipment to its customer.
 3. If there was any agreement between the Plaintiff and the defendant, the agreement was rescinded and cancelled.
 4. The plaintiff has not made adequate attempts to recover the equipment or collect from its purchaser and has otherwise failed to mitigate damages.
 5. Any alleged agreement between the Plaintiff and Defendant is void and unenforceable because of lack of consideration.
The evidence at trial indicates the following scenario: Rodney Hallin, Controller for the defendant, testified that the defendant is a leasing company that purchases equipment from vendors and then leases the equipment to the defendant's clients. CT Page 9967 Hallin testified that he was responsible for signing purchase orders and paying vendors. Prior to the events alleged in the complaint, the defendant entered into a master lease agreement with Dependable for equipment used by Dependable in the sanitation removal business.
On November 14, 1990, an employee of Dependable, Robert Pasqua, faxed a letter to Bette Brogan, general manager of the plaintiff, confirming the purchase of the shredder that was to be shipped C.O.D. to Dependable. (Transcript, p. 24; Defendant's Exhibit B.) The purchase order did not reference that the shredder was to be purchased by the defendant nor was the plaintiff aware of the lease arrangement between the defendant and Dependable. (Transcript, p. 65-67; Defendant's Exhibit B.) On November 19, 1990, the plaintiff delivered the shredder to Dependable via St. Johnsbury Trucking Company. Dependable issued check #1310, postdated November 30, 1990, to St. Johnsbury for the benefit of the plaintiff, in the amount of $13,500.00. The check was indorsed on the front with the notation "10 day free trial." The plaintiff received the check from St. Johnsbury on December 3, 1990 (Transcript, p. 65-66.), and the check was dishonored and returned by the bank to the plaintiff on or about December 11. (transcript, p. 61.)
Lucy Hummel, Dependable's bookkeeper, testified that she spoke to Brogan, the plaintiff's general manager, to inform her that the machine was going to be financed by the defendant. (Transcript, p. 26.) Hummel also testified that Doug Perez, one of the defendant's leasing agents, agreed to lease the shredder to Dependable. (Transcript, p. 27.) Hummel also testified that she had sent notice to Doug Perez that Dependable had accepted the machine after the ten day trial period. (Transcript, p. 27.) Hummel testified that check #1310 was issued to the plaintiff with the understanding that the plaintiff would hold the check for the ten day trial period, at which point the plaintiff would return the check to Dependable when the defendant paid for the machine. (Transcript, p. 32.) This aspect of the agreement was not memorialized in any writing. It is noteworthy to add that there was no evidence of any lease payments made by Dependable to the defendant that would indicate that defendant had in fact accepted the arrangements.
Dependable's master lease schedule with the defendant was amended on December 17, 1990, in order to add a shredder to the equipment schedule; however, it was never executed by the CT Page 9968 defendant.
On December 21, 1990, the defendant sent a purchase order #00717-04B (attached to the plaintiff's revised complaint) to the plaintiff, ordering one shredder at the price of $13,500.00. The purchase order did not list the serial number of the shredder that had been delivered, but merely requested one model 20 shredder. In the purchase order the, the defendant directed delivery of the shredder to Dependable. The defendant also sent a letter to the plaintiff dated December 21, 1990, stating that
 Dependable Roll Off Trucking Service, Inc. has been approved for the leasing of the equipment listed and, therefore, we are enclosing our purchase order for same to be signed and returned to us at your earliest convenience.
 An invoice showing Center Capital Corporation as the purchaser is necessary to assure prompt and proper payment. We also require a brochure or literature of the equipment that we are purchasing before issuing payment. Please note our purchase order number on the invoice and the literature.
 Your cooperation in this matter will expedite payment of your invoice upon acceptance of the equipment by the Lessee.
Richard Owsley, the plaintiff's president, testified that the plaintiff did not seek to recover the shredder form [from] Dependable based on the information from Dependable that they were going to lease the shredder from the defendant. (Transcript, p. 43-44.) The defendant's purchase order was not signed by the plaintiff until January 7, 1991. (Plaintiff's Exhibit #8.)
The plaintiff's invoice to the defendant dated January 7, 1991, informed the defendant that the shredder had already been delivered to Dependable on November 15, 1990.
John Coates, the defendant's credit manager, testified that the defendant approved the lease of the shredder equipment by Dependable, but that the paper work for this particular item of the master lease was never completed. (Transcript, p. 51, 54.) As Coates testified, the defendant required a formal written acceptance of the equipment from the lessee after the defendant CT Page 9969 received the invoice and proof of the shipment from the vendor. Also, as Coates testified, the defendant was required to sign the master lease schedule that would incorporate the shredder into the master lease agreement. (transcript, p. 54, 80.) As Coates testified, after one of Dependable's checks was dishonored on January 9, 1992, the plaintiff attempted to cancelled the purchase order with the plaintiff for the shredder. On January 9, 1991, the defendant's controller, Hallin, sent a certified letter to the plaintiff's general manager, Brogan, notifying the plaintiff of the defendant's intent to cancel the purchase order for the shredder.
The original transaction between the plaintiff and Dependable did not reference the defendant. In fact, the plaintiff's president, Owsley, testified that the plaintiff did not become aware of the defendant's interest in the transactions until the check for Dependable was dishonored on December 11.[,] 1990. (Transcript, p. 66.) As Owsley testified, after the dishonor, the plaintiff was informed by Dependable, not the defendant, that the Dependable was going to lease the shredder from the defendant. The defendant did not contact the plaintiff until the December 21, 1990 purchase order.
The defendant's purchase order included a clause requiring the vendor warrants that "it has good title to the equipment furnished hereunder . . . . Title to the equipment . . . shall pass freely and unencumbered from vendor directly to Buyer." (Plaintiff's Exhibit #8.)
The plaintiff argues that it sold the shredder to the defendant after Dependable's check was dishonored and the defendant agreed to purchase the machine for Dependable. The defendant, on the other hand, claims that the title to the shredder had already passed to Dependable, due to the plaintiff's failure to reclaim the machine after Dependable's check was dishonored and, therefore, the defendant was entitled to withdraw its purchase order for the shredder because the defendant was unable to convey title to the defendant, as required by the terms of the purchase order.
There is some dispute regarding the terms of the initial sale of the shredder to Dependable. Although the check was postdated and the marked with the notation "10 days free trial," the purchase order and invoice between the plaintiff and Dependable reference a cash sale, C.O.D. (Defendant's Exhibit B.) However, CT Page 9970 as will be noted below, this factor does not change the transfer of title, because the plaintiff never exercised its right to reclaim the shredder, thereby vesting title to the shredder in Dependable.
Under the Uniform Commercial Code ("UCC"), as adopted in Connecticut, General Statutes § 42a-1-101 et seq.,
 [u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to physical delivery of goods.
General Statutes § 42a-2-401(2). Title to goods therefore passe on delivery. Id. The parties performance with respect to General Statutes § 42a-2-401(2) is modified by the provisions of General Statutes § 42a-2-511, which provide as follows:
 (1) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery.
. . . .
 (3) . . . payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentation.
If the sale were a cash sale, the plaintiff would have a right to reclaim, limited to 10 days after the receipt of the goods. Szabo v. Vinton Motors, Inc., 630 F.2d 1, 3 (1st Cir. 1980); In re Samuels Co., 526 F.2d 1238, 1245 (5th Cir. en banc), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99
(1976); see also Holiday Rambler Corp. v. First National Bank Trust, 723 F.2d 1449, 1452 (10th Cir. 1983). As noted by the United States Court of Appeals for the First Circuit,
 [a]lthough the right of a cash seller to reclaim goods in a "bad check" transaction is not specifically set forth in the Code provisions, such a reclamation is inherent in sections 2-507(2) and 2-511(3) of the Code. . . . Section 2-507(2) makes a buyer's "right as against the seller to retain or dispose of [the goods] . . . conditional upon his making the payment CT Page 9971 due." Section 2-511(3), in turn provides that "payment by check is conditional and is defeated as between parties by dishonor of the check on due presentment." Taking these two Code provisions together the clear implication is that a buyer cannot retain and, conversely, a seller has the right to reclaim goods sold in a cash transaction if the buyer's check is dishonored.
Szabo v. Vinton Motors, Inc., 630 F.2d 1, 3 (1st Cir. 1980). However, as the court noted, a cash seller must make a demand for the return of the goods, as under UCC provisions § 2-702 (General Statutes § 42a-2-702 as adopted in Connecticut) within 10 days of delivery. Id. After the expiration of the ten day period, the sale is no longer conditional and the buyer has complete title to the goods under General Statutes § 42a-2-401
and General Statutes § 42a-2-511.[1] See HolidayRambler Corp. v. First National Bank Trust, supra, 723 F.2d 1452 (construing UCC as adopted by Kansas).
The same result would obtain if the sale were a credit sale. As noted in the official UCC comments to General Statutes §42a-2-511, comment 6,
 [w]here the instrument offered by the buyer is not a payment but a credit instrument such as a note or a check postdated by even one day, the seller's acceptance of the instrument insofar as third parties are concerned, amounts to a delivery on credit and his remedies are set forth in the section on the buyer's insolvency [General Statutes § 42a-2-702]. As between the buyer and the seller, however, the matter turns on the present subsection and the section on the conditional delivery and subsequent dishonor of the instrument gives the seller rights on it as well as for breach of the contract for sale.
(Emphasis added.) Accordingly, if the payment by postdated check constituted a credit sale, the plaintiff had the right to reclaim the shredder within 10 days of the defendant's receipt of the goods under General Statutes § 42a-2-702. See Szabo v. VintonMotors, Inc., supra, 630 F.2d 3 n. 1 (Sellers right to reclaim goods in credit sale within 10 days of delivery is specifically set forth in § 2-702 of the Code); see also General Statutes § 42a-2-702. Accordingly, after delivery and acceptance by CT Page 9972 the buyer, where the seller does not reclaim within 10 days under General Statutes § 42a-2-702, he is forced to proceed on his remedies as provided by General Statutes § 42a-2-709 for the price, or on the instrument. See General Statutes § 42a-3-802 ("If the instrument is dishonored action may be maintained on either the instrument or the obligation."); see also General Statutes § 42a-2-709 (""when the buyer fails to pay the price as it becomes due the seller may recover . . . the price of goods accepted. . . .").
Nevertheless, in a sale by check or a credit sale, the seller must reclaim within 10 days of delivery. Following this point, the seller is limited to an action for the price or on the instrument; General Statutes § 42-3-802; and the buyer has clear title to the goods. See Holiday Rambler Corp. v. FirstNational Bank Trust, supra, 723 F.2d 1452 (following expiration of right to reclaim, "buyer can sell or give a security interest in goods free of any retained right in the seller").
As noted, the shredder was delivered to Dependable on November 19, 1990. Accordingly, the sale was no longer conditional following November 29, 1990, and Dependable had title to the shredder. The defendant did not submit a purchase order for the shredder until December 21, 1990. As noted, the terms of the sale required the plaintiff to transfer clear title. The plaintiff was unable to do so because title to the shredder had already passed to Dependable. Accordingly, the defendant was entitled to revoke the purchase order. See General Statutes §42a-2-711. Therefore, there was no sale between the plaintiff and the defendant because title had already passed to Dependable.
It should be noted that the plaintiff's complaint contains only a cause of action for breach of a contract of sale between the plaintiff and the defendant. There are no allegations of detrimental reliance or novation, although the plaintiff suggested in its brief that it failed to reclaim the shredder based on the possibility of the defendant leasing the shredder to Dependable. The plaintiff failed to prove that a sale occurred between the defendant and the plaintiff, as alleged in the complaint. Accordingly, judgment is entered for the defendant.
SYLVESTER, J.