### JAMES ELPHICK vs. GEORGE W. HOFFMAN.

The petitioner sold the respondent certain oyster grounds which the
respondent mortgaged back. On a bill for the foreclosure of the mort-
gage the respondent set up fraudulent representations in the sale, as to
the quantity of ground planted and as to the quality of the oysters. It
was found that the respondent did not rely on the representations alone,
but required a written guarantee that they were true. The court
assessed damages in his favor upon the guarantee and applied them in
reduction of the mortgage debt. Held that the respondent could not
also avail himself of the fraud as affecting the title.

The object of the joint commission for the settlement of the boundary line
through Long Island Sound between this state and New York, was not
to change the line, but to determine where it was. The presumption is
that the line has always been as thus determined, unless the contrary
appears.

Judgments can be reversed on error only for errors apparent on the record.
Matter can not be considered for this purpose that is merely alleged, and
not found true or admitted by the pleadings.

BILL for the foreclosure of a mortgage; brought to the
Superior Court. Facts found by a committee; remonstrance
against acceptance of report; remonstrance overruled and
decree for the petitioner. (*Hitchcock, J.*) Motion in error
by the respondent. The case is sufficiently stated in the
opinion.

*H. W. R. Hoyt*, for the plaintiff in error.

*J. B. Curtis* and *N. R. Hart*, for the defendant in error.

CARPENTER, J. The petitioner sold to the respondent certain oyster grounds in the waters adjacent to the town of Greenwich, taking a mortgage on the same property as security for a portion of the purchase money. This suit is to foreclose that mortgage. The answer sets up three grounds of defence—warranty and a breach, fraud, and a total or partial failure of consideration, that is, that the deed from the petitioner to the respondent conveyed no title. The facts were found by a committee, judgment was rendered for the petitioner, and a motion in error filed by the respondent.

There was a long remonstrance containing twenty-seven objections to the acceptance of the report of the committee. Two of them were found true and adjudged sufficient by the court, and the cause was referred to the same committee for a full finding upon those matters. A supplemental report was filed, and a remonstrance against its acceptance.

The objections to the committee's report and the errors assigned may be classed under two heads—fraud and a defect of title ; the committee having found a warranty and a breach, and assessed damages, which were allowed in reduction of the petitioner's demand.

The specific charge of fraud is that the petitioner misrepresented the quantity of ground, and the quantity, quality and value of the oysters planted thereon. The case finds that the respondent did not rely on these representations alone, but required and received a guarantee that they were true. If the alleged false representations did not induce the respondent to make the purchase, then it is a case of fraud without damage. If he refused to accept the representation unless put in the form of a guarantee, his only redress is on the contract. He is not at liberty to lay that aside and resort to fraud. But even if we may suppose that he is entitled to either remedy he is certainly not entitled to both. Electing to pursue the one he waives the other. In this case he embodied both in his defence.

The contract and its breach were proved and the damages allowed. That would seem to lay the fraud out of the case. But if the question of fraud is at all material the court below has found that there was no fraud, and that disposes of it; for it is a case of actual, and not of legal or constructive fraud. As such it was a question of fact for the court below, and not of law for this court. For the same reason the committee properly refused to report the evidence bearing upon the question of fraud.

It is also alleged in the answer that a majority of the committee did not act in designating the oyster grounds in question, and that the petitioner well knew it and concealed the same from the respondent. But the supplemental report finds that a majority of the committee did act in the allotments referred to, and that ends that question.

The remaining points have respect to the question of title.

The committee found "that the petitioner conveyed to the said Hoffman the said oyster grounds by a good and valid deed," &c., "giving him good title thereto." By this we are to understand that the deed was regular in form and effective as a conveyance unless successfully impeached by some of the circumstances and matters alleged in the answer.

1. It is alleged that the designation in some instances is void for the reason that a majority of the committee did not act. That objection cannot prevail as the committee found the fact against the respondent.

2. It is then alleged "that all of said lands and oyster grounds, being places for planting oysters, were by the petitioner and the persons who conveyed the same to him, applied for and procured to be made to themselves for the purpose of assigning the rights," &c., "for profit and speculation, contrary to the statutes of this state." It is not found that this allegation is true, neither expressly nor by implication. On the contrary it is found untrue; for the report says that "all the allegations, both of the petition and answer, are found untrue, except as herein expressly or impliedly found to be true." But if otherwise, the designa-

tions in question were validated and confirmed by statute. Session Laws of 1878, p. 276, secs. 8, 9.

3. The next objection to the title is "that said lands and oyster grounds were and are situated in the waters of Long Island Sound, below high water mark, and that the same were and are covered by and with the public waters of the United States; that the state of Connecticut has no ownership in nor jurisdiction over said land or oyster grounds, and could not and cannot grant rights in nor legislate regarding the same," &c.

We are in some doubt as to the precise nature of the question which the respondent's counsel intended to raise by this clause in the answer; and that doubt is not entirely removed by the remonstrance and the elaborate brief. If it was intended to make the claim that the legislature has no power to legislate regarding oyster grounds outside of the territorial limits of the several towns and covered with the navigable waters of the United States, but within the political jurisdiction of the state, the claim is met and decided against the respondent in the case of *Rowe* v. *Smith*, 48 Conn., 444. We suppose however that it has reference mainly, if not entirely, to the question whether the oyster grounds in question were within the limits of this state or of the state of New York. Assuming that to be so, the claim is met and determined against the respondent by the finding in the supplemental report, which is "that the oyster grounds in question, and all of them, were and are situated in the navigable waters of the United States in Long Island Sound, below low water mark, within the boundary line of the state of Connecticut, as ascertained and defined by the late joint commission of the states of New York and Connecticut, and more lately confirmed and established by the legislatures of said states, and within the limits and jurisdiction, for all purposes of oyster planting and cultivation, of the town of Greenwich." In this connection we will notice the objection made by the respondent that this finding is not full and complete, but that the committee should have found whether the oyster grounds were within this state when they were staked out and designated

by the oyster committee of the town of Greenwich. We think it is substantially found that they were in this state at that time. The object of the joint commission was not to change the boundary line but simply to determine where it was; and when that was determined, the presumption is that the real line has always been as thus determined, unless the contrary appears.

It is claimed in the remonstrance that the committee erred in rejecting certain evidence offered by the respondent relating to the staking out of the oyster grounds and to the manner in which the same were applied for, &c. In respect to these objections it is enough to say that it is not found that the evidence was rejected. There was no answer to the remonstrance, and of course no regular issue raised by the pleadings. Whether the trial proceeded upon a demurrer or a denial of the facts does not appear from the record. Perhaps, in analogy to the somewhat loose practice which prevailed to some extent before the Practice Act went into operation—that in ordinary actions if no plea was filed the case was considered as standing on the general issue—we may regard this case as standing upon a denial of the facts. Judgments can be reversed on motions in error only for errors that are apparent of record; and we cannot predicate error of facts alleged but not found or admitted by the pleadings. Now in this case the pleadings do not admit the facts and they are not found by the court. It would have been better if the petitioner had replied specifically to each ground of remonstrance. In that case many of the questions discussed here would have been disposed of in the court below. But no omission of duty by the petitioner can aid the respondent; for it was his privilege, and it was equally his duty, to call for a regular answer and to have the issues regularly presented by the pleadings. If parties choose to try questions of fact in such a loose manner the party desiring to file a motion in error will be likely to suffer by it.

We discover no error in this record and the judgment must be affirmed.

In this opinion the other judges concurred.