No. 59,149

THOMAS SLAYMAKER, *Appellant*, v. WESTGATE STATE BANK and TOM ROSE, *Appellees*.

(739 P.2d 444)

Opinion
filed June 12, 1987.

*Bernard E. Brown*, of Kansas City, Missouri, argued the cause, and *James F. Foster*, of Kansas City, Kansas, was with him on the briefs for appellant.

*R. Pete Smith*, of McDowell, Rice & Smith, Chartered, of Kansas City, argued the cause and was on the brief for appellee Westgate State Bank.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Plaintiff Thomas Slaymaker sued defendants Westgate State Bank and Tom Rose for fraud and violations of the federal odometer law arising out of the purchase of a 1962 Triumph TR-3. The district court granted defendant bank partial summary judgment on the fraud count. On the federal odometer claim, the jury found for plaintiff and awarded actual damages of $3,500 (tripled under the federal law to $10,500). The trial court awarded $7,500 in attorney fees to plaintiff. Plaintiff appeals the district court's judgment in all respects. Defendant Westgate State Bank cross-appeals from the award of attorney fees.

In June 1982, plaintiff attended a Kruse Auto Auction in Tulsa, Oklahoma. After arriving at the Tulsa auction, plaintiff discovered a 1962 Triumph TR-3 automobile.

Plaintiff had previously owned an old 1958 TR-3, and in 1975, he had purchased a 1960 TR-3 for nostalgic reasons.

The 1962 TR-3 carried a sign which stated:

"**1962 TRIUMPH T-R 3**
"*Original - Unrestored . . .*
"Stored 20 years, only 528 miles. Only one known in the world. Very rare, complete with original top, boot and side curtains.
"**Last** year ever made!
"A big plus—in any rare collection . . .
"(LOOK AND TAKE A PICTURE)
" 'BUT,' PLEASE DON'T TOUCH"

Plaintiff believed that, if the information on the sign were correct, it would be "a hell of a buy." He testified in a deposition that, if the sign were correct, the car would be worth $15,000 or more. The sign, however, was not correct.

A previous owner, Clint Pickett, had restored the car from the ground up and, during the restoration, had reset the odometer to zero. The car was eventually repossessed by defendant Westgate State Bank. The bank sold the car to defendant Tom Rose, a car

dealer in the Kansas City area. In June 1982, Rose took the car to the Kruse Auto Auction in Tulsa.

When the TR-3 went on the block, plaintiff unsuccessfully bid $8,000. The bid went up to around $11,000, but the owner turned down the final bid. After the bidding, plaintiff spoke directly with Rose about the car. Plaintiff testified as to that conversation:

"A. [Plaintiff] . . . The conversation was generally revolving around whether the car was for sale. Obviously, he said yes. I told him that the only concern I had about the car was that—the authenticity of its being original.

"Q. [Mr. Smith] Why were you concerned about that?

"A. I guess it didn't seem right. It didn't seem logical to have a 20-year-old vehicle have only 528 miles, but the condition of the car was such that I could have—if it was in an estate and it's not an unusual thing to know of those type vehicles documented and I asked him for documentation, and his general response was that he didn't know a lot about the car, that the bank had authenticated it. That they knew all about it and that as far as he knew what was said was correct."

Plaintiff remained unconvinced of the "original" status of the TR-3. Plaintiff telephoned John Goans, a friend and a former Triumph dealer, in Kansas City. Plaintiff asked Goans if there was anything plaintiff could look at to determine if the car was in original condition, although they both realized "the problem of trying to identify over the telephone in any straightforward [way] whether the car was, in fact, original." Goans suggested checking the gearbox and the tires. If the tires were not Pirellis or Dunlops, or if the transmission was "synchromeshed," then the car was probably not in original condition. Plaintiff inspected the car and found that the tires were Pirellis and that the transmission was not synchromeshed.

Plaintiff's doubts were not eliminated. He again spoke with defendant Rose and he testified to the following:

"[I went] back in and again voiced my reluctance to accept simply the verbal statement that the sign as represented was true. He reiterated the story that the car had come through a bank, through the Garber [estate], and at that point he said that if it turned out that I bought the car and it was not as represented by the sign, that we would negotiate the deal. He would give me the money back if the car was not driven. I would give him the car back if it was in the same state as when I got it.

"Q. Did that, then, induce you to buy the car?

"A. Yes.

"Q. At the time that he made that offer to you, that if it was not as represented in

Exhibit 1 that he would let you back out of the deal and give you your money back, was that a satisfactory deal with you at that time?

"A. Well, I think part of that being a satisfactory deal at that time was that I had ascertained that he was a dealer; that he lived in or had the operation that he worked out of in Grandview, and it made it, I don't know, a little more palatable that if there was—if, in fact, it turned out not to be that, it was simply a short trip to do something about it.

. . . .

"Q. Let me go back and ask you my question: At that time did you still have some lingering concern as to whether this Exhibit 1 data was correct?

"A. Maybe, lingering concern is a good word, but it was offset by his statement that if it turned out not to be that we would negotiate the deal.

"Q. And then that was a satisfactory transaction for you then to purchase it and if the contents of Exhibit 1 turned out to be true, you would have a vehicle that you would keep and the deal would go through, and if the contents of Exhibit 1 were untrue, then you would get your money back?

"A. Yes."

Plaintiff purchased the car from defendant Rose for $9,000. At the time, plaintiff believed that, if the car was an original, he had a $15,000 car at a price that was, in his words, a "steal."

Plaintiff took the car home and had Goans inspect the car. Goans told plaintiff that the car, although in excellent condition, had been rebuilt and was worth between $5,500 and $6,000. At trial, plaintiff testified that Rose refused to rescind the transaction. Rose testified that he offered to repurchase the car, that plaintiff was not interested in rescinding the transaction but, instead, in bringing suit.

On July 1, 1983, plaintiff filed suit against defendant Westgate State Bank. The petition alleged the defendant bank had committed fraud, and sought $9,500 in compensatory damages and $300,000 in punitive damages. Plaintiff also alleged that the bank had, with intent to defraud, failed to provide to defendant Rose a federal odometer statement, thereby violating 15 U.S.C. § 1988 (1982), and sought treble damages of $28,500. The petition was amended on January 30, 1984, to include defendant Rose.

The trial court sustained a partial summary judgment motion, dismissing the fraud claim against both defendants for plaintiff's failure to prove reliance on the alleged misrepresentations. The case proceeded to trial on the federal odometer statute count, and the jury found for plaintiff. The jury found that plaintiff's actual damages were $3,500 ($9,000 less $5,500 fair market value of the TR-3). The trial court awarded $7,500 in attorney fees.

Plaintiff first argues that the trial court incorrectly considered defendant Westgate State Bank's motion for summary judgment. Plaintiff contends that the issue of reliance was not identified in the pretrial order and that the motion was not timely filed.

The pretrial order was entered on November 16, 1984, and specified that additional motions were to be filed on or before January 20, 1985. The order does not specifically address reliance under the headings of issues of fact or law. On August 2, 1985, defendant Westgate State Bank filed a motion for partial summary judgment, alleging that, as a matter of law, plaintiff had not relied upon false representations concerning the condition of the car.

Plaintiff failed to respond to the motion for partial summary judgment within 21 days. Under Supreme Court Rule 141 (235 Kan. cx), he has therefore been "deemed to have admitted the uncontroverted contentions of fact set forth" in the motion for summary judgment. In *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 469, 657 P.2d 517 (1983), this court addressed the nature of pretrial orders. The court noted the "broad discretionary power placed in the trial court over modification of pretrial orders," and stated:

" 'Although federal judges generally recognize the binding effect of the pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of preclusion always is viewed as a matter of judicial discretion. Thus, in the absence of an abuse of that discretion, it not error for the court to permit the introduction of evidence or to give instructions on issues beyond the scope of the order or to hear witnesses not listed in accordance with the court's order. In addition to allowing matter to be introduced that is outside the pretrial order in appropriate cases, courts have held that the order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language. Even if the pretrial order cannot be interpreted to apply to the issue that is challenged as being outside its terms, relief still may be available because Rule 16 explicitly provides that the order may be modified to "prevent manifest injustice." ' " 232 Kan. at 468-69.

Since the defendant bank denies the plaintiff's claim of common-law fraud, every element necessary to prove actionable fraud is in issue. An essential element of common-law fraud is justifiable reliance on the misrepresentations by the plaintiff which resulted in his injury. It was not necessary to set out in the

pretrial order the elements necessary to constitute fraud as a prerequisite to the defendant bank filing its motion for partial summary judgment.

Plaintiff advances no convincing analysis of how the trial court abused its discretion in considering the motion for summary judgment. Nor does he suggest how he was prejudiced by the consideration of the motion, other than having to defend against it on the merits. Plaintiff also filed motions after the January 20, 1985, cut-off date designated in the pretrial order. His current argument that it was an abuse of discretion to permit the bank to do what he also had done is not convincing, and we find it has no merit.

Plaintiff next contends that the trial court erred by granting partial summary judgment for the defendants on the common-law fraud count.

Summary judgment may be granted where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue [of] material fact and that the moving party is entitled to judgment as a matter of law." *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444 (1985). In reviewing a grant of summary judgment, an appellate court must read the record in the light most favorable to the party who defended against the motion.

Much of plaintiff's present argument is based either upon testimony during the trial on the federal odometer count or on other portions of the record which were not timely presented to the trial court. On August 2, 1985, defendant Westgate State Bank filed its motion for partial summary judgment on the common-law fraud count, and personally served plaintiff's counsel with a copy of the motion. Plaintiff failed to file any memorandum opposing the bank's motion within 21 days of its filing. Twenty minutes before 5:00 p.m. on August 23, 1985, plaintiff's attorney filed a motion for enlargement of time. The motion was not granted on that day nor at any subsequent time.

Pursuant to Rule 141, the district court in its discretion deemed the motion submitted. Plaintiff is deemed to have admitted to the uncontroverted contentions of fact contained in the bank's partial summary judgment motion. The trial court's deci-

sion will not be disturbed on appeal absent a clear showing of an abuse of discretion. The appellant has the burden of showing the trial court's decision was an abuse of discretion. *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 715 P.2d 2 (1986). In support of his argument, plaintiff cites *Timi v. Prescott State Bank*, 220 Kan. 377, 553 P.2d 315 (1976), where this court stated that a trial court presented with a motion for summary judgment should search the record to determine whether factual issues exist. 220 Kan. at 386. Plaintiff then proceeds to attack the summary judgment motion on its merits by relying upon deposition testimony which was not timely presented to the trial court under Rule 141, or upon testimony during the trial on the federal odometer claim which occurred after the motion for summary judgment had been granted.

Plaintiff's attempt to use *Timi* to excuse his failure to comply with Rule 141 is not persuasive. This court's decision in *Timi* does not directly or by inference relieve a party from compliance with Supreme Court Rule No. 141. It is not for the court to seek out, but for counsel to designate, that which supports a party's position. A party whose lack of diligence frustrates the trial court's ability to determine whether factual issues are controverted falls squarely within the sanctions of Rule 141. To oppose a motion for summary judgment, a party must actively come forward with something of evidentiary value to establish a material dispute of fact. *Willard v. City of Kansas City*, 235 Kan. 655, 657, 681 P.2d 1067 (1984). Therefore, we find the trial court did not abuse its discretion in finding that the defendant bank's motion for summary judgment was submitted for determination. In that event, plaintiff is deemed to have admitted to the uncontroverted contentions of fact set forth in the bank's memorandum. We must therefore determine whether the uncontroverted facts set forth in the bank's memorandum are legally sufficient to support the granting of partial summary judgment in favor of the defendants on plaintiff's claim of common-law fraud.

Actionable fraud includes an untrue statement of material fact, known to be untrue by the person making it, made with the intent to deceive or recklessly made with disregard for its truthfulness, where another party justifiably relies upon the statement and acts to his injury. *Nordstrom v. Miller*, 227 Kan. 59, 65, 605

P.2d 545 (1980); *Loucks v. McCormick*, 198 Kan. 351, 356, 424 P.2d 555 (1967). The injured party must have been deceived by, and have relied upon, the defendant's misrepresentations in order to recover damages for fraud. *Youle v. Fosha*, 76 Kan. 20, 25, 90 Pac. 1090 (1907). The injured party's reliance on a fraudulent misrepresentation "must be reasonable, justifiable and detrimental." *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan. App. 2d 461, 464, 701 P.2d 977, *rev. denied* 238 Kan. 877 (1985).

The summary judgment motion in the present case is based almost entirely upon statements made by plaintiff during his deposition. Defendant Westgate State Bank argues that plaintiff relied on defendant Rose's promise to rescind the transaction, not upon the representations of the car's mileage and "original" condition. Plaintiff contends that, while he may have relied in part upon Rose's promise, he also relied upon the representations of the car's mileage and "original" condition.

It is true that the misrepresentations need not be the sole cause of the plaintiff's conduct which results in his injury. *Vernson v. Baker*, 124 Kan. 575, 577, 261 Pac. 563 (1927). It is sufficient if the fraudulent misrepresentations were part of the moving cause, and, absent those misrepresentations, plaintiff would not have acted to his detriment. 124 Kan. at 577-78. Plaintiff contends that, while he may have relied in part upon defendant Rose's promise to repurchase the TR-3, he also relied in part on the representations that the car was in "original" condition and had been driven only 528 miles. While a person claiming fraud may have relied only in part on the fraudulent representations of another, that reliance must still be reasonable, justifiable, and detrimental. *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan. App. 2d at 464. The question is whether plaintiff did partially rely upon the representations of "original" condition and, if so, whether it was reasonable and justifiable for him to do so.

When plaintiff directly spoke with defendant Rose after the unsuccessful auction of the car, he told Rose that his "only concern . . . about the car was . . . the authenticity of its being original." Plaintiff felt that it was *possible* the representations of original condition were correct, but that "it didn't seem right. It

didn't seem logical to have a 20-year-old vehicle have only 528 miles." Plaintiff was sufficiently concerned over the truthfulness of the sign's representations that he telephoned Mr. Goans in the Kansas City area, whom he knew to be an expert on Triumph automobiles. Both Goans and plaintiff "realized . . . the problem in trying to identify over the telephone in any straightforward [way] whether the car was, in fact, original." Goans told plaintiff several items to inspect which could show the car was not in original condition, but plaintiff's inspection of these did not show the car was not original.

Plaintiff testified that, after making the inspection, he still had doubts about the truthfulness of the sign, as well as defendant Rose's verbal statements. He admitted that he had a "lingering concern" that the representations on the sign were false. This lingering concern was "offset" only by Rose's promise to repurchase the car.

Plaintiff argues that the presence of the agreement to repurchase the automobile does not eliminate his reliance on the representations of the sign. The mere presence of a warranty will not ordinarily prevent liability where the plaintiff has also relied on the fraudulent misrepresentations of another.

Where the plaintiff has *insisted* on the warranty as a precondition to entering into any transaction, the decisions are divided. In *Busch v. Wilcox*, 82 Mich. 336, 339, 47 N.W. 328 (1890), the court stated:

"The third reason assigned for a rehearing by the defendant is mainly an argument upon the facts, and if addressed to the jury, or if we could decide upon the facts, would not be without great weight. But we cannot reverse a case upon disputed facts, however much we might feel that they impressed us differently from what they did the jury. Now, we might infer and find from the testimony that Busch relied exclusively upon the guaranty of Mr. Hall as to the quantity of pine and of Van Riper's estimate. The testimony is very strong in that direction. But Busch also testifies that he relied upon the representations made by Mr. Hall, and we cannot say that he did not rely upon both. It does not seem to us that, because he would not have entered into the contract without Hall's guaranty, such fact was a waiver of his right to rely upon the prior representations made by Hall, whatever may have been the value of such verbal guaranty in a legal point of view."

The Supreme Court of Connecticut took a different view in *Elphick v. Hoffman*, 49 Conn. 331, 332 (1881):

"The specific charge of fraud is that the petitioner misrepresented the quantity of ground, and the quantity, quality and value of the oysters planted thereon. The case finds that the respondent did not rely on these representations alone, but required and received a guarantee that they were true. If the alleged false representations did not induce the respondent to make the purchase, then it is a case of fraud without damage. If he refused to accept the representation unless put in the form of a guarantee, his only redress is on the contract. He is not at liberty to lay that aside and resort to fraud."

However, in the instant case, it is not the presence of a warranty *alone* that prevents a finding of justifiable reliance. In none of the cases cited above did the plaintiffs face suspicious circumstances which caused them to entertain actual doubts of the truthfulness of the fraudulent misrepresentations. In neither of these cases did the plaintiffs seek to relieve those doubts by requiring a warranty. We are not presented with the simple case in which the tortfeasor adds a warranty to his misrepresentations, or where the victim requires a warranty as a part of his normal course of business. In the present case, defendant Rose's promise to rescind the contract if the car was not in original condition is important because it reflects plaintiff's consistent refusal to believe the representations of original condition.

The essence of the tort of fraud is that the defendant tortfeasor has *deceived* his victim. See *Smith v. Bridgeport Machine Co.*, 151 Kan. 444, 445, 100 P.2d 65 (1940). The victim must have believed the misrepresentations to be true. *Canterbury Court, Inc. v. Rosenberg*, 224 Kan. 493, 503, 582 P.2d 261 (1978).

Plaintiff did not rely on the *truthfulness* of the sign at the Tulsa auto auction because he never believed it was true. Plaintiff actively doubted the truth of the claims of "original" condition. Far from simply failing to recognize the danger signals that the sign's representations were not correct, plaintiff consciously disregarded the acknowledged possibility or probability that the sign was not correct.

Based upon the facts of the case, as known to plaintiff at the time he purchased the car, only two possibilities existed. First, the car *might* be in "original" condition with only 528 miles, in which case plaintiff knew he would be "stealing" the car, as he termed it. He would be buying a car he felt was worth $15,000 for only $9,000. On the other hand, if plaintiff's concerns were

correct and the car was not in original condition, he would be able to rescind the transaction.

Plaintiff, according to his own testimony, did not rely upon a belief that the representations of "original" condition were true. He actively doubted whether they were true. Rather, what plaintiff relied upon was the *possibility* that they might·be true, coupled with the knowledge that he could rescind the transaction if they were not true. The situation is similar to the one presented in *Humphrey v. Merriam*, 32 Minn. 197, 20 N.W. 138 (1884). In *Humphrey*, the Minnesota Supreme Court held that the plaintiff had not demonstrated a cause of action for fraud based upon the misstatements of the defendant's agent:

"His only reliance upon Carver's statements consisted, not in his belief of their truth, but because he thought, if false, Merriam would be responsible for them. He made his purchase, not because of any belief in the *truthfulness*, but because he thought Merriam would be liable as warrantor to make them good if they proved untrue. On such a state of facts, as the court below well remarked, if plaintiff made out anything, it was a cause of action on a warranty and not for deceit." 32 Minn. at 200.

The Restatement (Second) of Torts § 548 (1976), provides:

"The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity."

The Comment to this section also emphasizes that the party claiming fraud must have believed the misrepresentations to be true:

"In order to justify recovery, the recipient of a misrepresentation must rely upon the truth of the misrepresentation itself, and his reliance upon its truth must be a substantial factor in inducing him to act or to refrain from action. . . . It it not enough that, without belief in its truth, he proceeds to enter into the transaction in the expectation that he will be compensated in an action for damages for its falsity." Restatement (Second) of Torts § 548, Comment *a*, p. 106.

Moreover, in addition to plaintiff's admitted failure to believe the sign's representations of mileage and "original" condition, plaintiff knew that other parts of the sign were completely false. The sign claimed the car was from the last year in which Triumph TR-3's were made. Plaintiff knew that was not true. In *Gratz v. Schuler*, 25 Cal. App. 117, 142 Pac. 899 (1914), the court held that a person cannot justifiably rely upon misrepresenta-

tions which a full investigation would show to be false, where he has discovered that other representations in the same transaction were untrue. The court stated:

"[H]aving ascertained that the defendants falsely represented one material matter in the transaction, this was notice that the defendants may have been false in all else that they said; and therefore it was incumbent upon the plaintiff thereafter to make a full investigation as to the truth or falsity of every other material representation." 25 Cal. App. at 121-22.

On this issue, our Court of Appeals has held, "if the recipient of a fraudulent representation has information which would serve as a danger signal to a person of ordinary intelligence and experience, he is not justified in relying upon that representation." *Young v. Hecht*, 3 Kan. App. 2d 510, 516, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979). A person cannot justifiably rely on a representation where he possesses information which would be a "red light to any normal person of his intelligence and experience." *Goff v. American Savings Association*, 1 Kan. App. 2d 75, 82, 561 P.2d 897 (1977). There is no justifiable reliance where the party alleging he was defrauded by the misrepresentations of another was so skeptical as to its truth that he reposed no confidence in it. See *McIntyre v. Lyon*, 325 Mich. 167, 173, 37 N.W.2d 903 (1949).

Viewing the record in the light most favorable to the plaintiff, we find that the district court did not err in granting partial summary judgment to the defendants.

After the motion for partial summary judgment had been granted for both defendants, the plaintiff orally moved to amend his petition to include the claim that defendant Rose's promise to repurchase the car if it was not in "original" condition was a fraudulent promise of future performance. No written motion to amend the petition to include this claim has ever been filed. Plaintiff argues it was error to refuse to permit the amendment.

" '[The] trial court is given wide latitude and discretion in permitting or refusing amendments [to the pleadings] in the interests of justice. In the absence of a clear abuse of discretion the order of the trial court should be approved.' " *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 265, 662 P.2d 1203 (1983) (quoting *Hoover Equipment Co. v. Smith*, 198 Kan. 127, 133, 422 P.2d 914 [1967]); accord *Garcia v. Southwestern Bell Tel. Co.*,

216 Kan. 591, 592, 533 P.2d 1242 (1975); see also *Hass v. Preferred Risk Mutual Ins. Co.*, 214 Kan. 747, 750, 522 P.2d 438 (1974). In the present case, the oral motion to amend the petition was made some 20 months after plaintiff had amended his original petition against defendant Westgate State Bank to include Rose as a defendant. It was made after the date set for the trial and after the jury had been impaneled. More importantly, plaintiff advances no reason for the failure to include the claim previously. The plaintiff fails to show how the court's refusal to grant the motion to amend was a clear abuse of discretion.

Plaintiff next contends that the trial court erred in holding that the treble damages award was joint and several. Plaintiff recovered actual damages of $3,500 under the provisions of the federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1901 *et seq.* (1982). 15 U.S.C. § 1989(a) (1982) provides for civil liability for persons violating the act with an intent to defraud:

"Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

"(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court."

In the present case, the jury found both defendants had violated the act, and found that plaintiff's actual damages were $3,500 (the $9,000 purchase price less the $5,500 actual value of the vehicle). Under the provisions of 15 U.S.C. § 1989(a)(1), the award was trebled to $10,500.

Plaintiff, however, contends that both defendants should be individually and separately liable for the treble damages award, rather than jointly and severally liable; that is, that defendants Westgate State Bank and Rose should each be liable for $10,500.

Contrary to plaintiff's contention, we find no direct support for his position in federal cases interpreting the Motor Vehicle Information and Cost Savings Act.

In *Stier v. Park Pontiac, Inc.*, 391 F. Supp. 397, 401 (S.D. W. Va. 1975), the court stated: "Each of the defendants, under the assumed facts as stipulated, may be held liable by plaintiff for

the statutory recoveries allowed." In *Stier*, the court was addressing the issue of whether privity limited a plaintiff's recovery under the federal odometer law to his immediate seller, or whether prior sellers in the chain of title might also be liable. 391 F. Supp. at 401. See also *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979), addressing the same issue. The court did not address the issue of whether each defendant may be independently assessed punitive damages.

The other cases cited by plaintiff are also distinguishable. *Mataya v. Behm Motors, Inc.*, 409 F. Supp. 65 (E.D. Wis. 1976), addressed the issue of whether one defendant in an action under the federal odometer law may seek contribution or indemnity from other codefendants. *Alley v. Chrysler Credit Corp.*, 767 F.2d 138 (5th Cir. 1985), addressed the issue of whether a settlement with one defendant would bar the plaintiff from obtaining the $1,500 minimum civil penalty of 15 U.S.C. § 1989(a)(1) from another defendant. Neither *Mataya* nor *Alley* was presented with the issue of whether the treble damages provisions of the law may be separately applied to each defendant. The court in *Alley* did hold that, where separate odometer statements were issued, each issuer is subject to separate and individual liability under the act.

On the other hand, several cases have directly held that liability under the federal odometer law is joint and several. *Yowell v. Boyd Chevrolet, Inc.*, 504 F. Supp. 77, 78 (W.D. Okla. 1980); *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1388 (D. Neb. 1977), *aff'd* 578 F.2d 721 (8th Cir. 1978). In *Duval*, the court stated its reasons for so holding:

"The policy of the odometer statute is both to 'prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers . . .' 15 U.S.C. § 1981. The goal of deterring those tempted to turn back odometers, which is encompassed within the purpose of prohibiting tampering, is effected in several ways: Having a minimum civil liability of $1,500.00 payable to a victim; tripling the actual damages if that results in more than $1,500.00; allowing of civil penalties payable to the United States of up to $1,000.00 for each violation of the Act on suit by the Attorney General (15 U.S.C. § 1990b); providing for criminal penalties (15 U.S.C. § 1990c); authorizing inspections, investigations and administrative proceedings by the Secretary of Transportation for the enforcement of the statute (15 U.S.C. §§ 1990d and 1990e); and injunctive relief (15 U.S.C. § 1990).

"The array of techniques for controlling violators or potential violators militates against a holding that each violator should be required to pay the full judgment and not receive a diminution of his liability by reason of payment by another. If the statute depended entirely or primarily upon the civil liability provision to deter incipient violators, or if the civil liability provision were not itself punitive, the argument for requiring each violator to pay without benefit of credit for payment by another would be stronger." 425 F. Supp. at 1388-89.

We agree and hold that the defendants are jointly and severally liable and that the plaintiff is entitled to recover only one treble damages award.

Pursuant to 15 U.S.C. § 1989(a)(2), the trial court awarded attorney fees of $7,500. Plaintiff has appealed this amount, arguing that it is so insufficient as to amount to an abuse of discretion. Plaintiff has requested attorney fees of at least $34,000. Defendant Westgate State Bank has cross-appealed, seeking a reduction of the attorney fee award to $3,500 and an order that the award should be equitably and severally allocated between the defendants by the trial court.

The parties are in agreement as to the legal standard by which the award should be measured. Both cite *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which identified twelve factors to be used in calculating attorney fee awards. These factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the service properly; (4) the preclusion of other employment by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Plaintiff's counsel Brown's request for attorney fees is based upon the following charges:

|  | Time Expended (hrs). | Rate/Hr. | Total |
|---|---|---|---|
| Attorneys' Hours | 473.2 | ½ @ $50.00 | $11,830.00 |
|  |  | ½ @ $65.00 | 15,379.00 |
| Law Clerks'/ Investigators' hrs. | 5.8 | $25.00 | 145.00 |
| Bill submitted by Brown's local counsel |  |  | 1,500.00 |
|  |  |  | $28,854.00 |

The final claim of $34,000 is then produced by increasing these figures by an extra 25% "[g]iven in particular the contingent nature of the attorney's fee and the fact that a considerable amount of time spent by plaintiff's counsel has not been recorded."

By applying the agreed standards to the trial court's award of attorney fees, we can determine if the trial court abused its discretion. As to the time and labor required, the increasing of the requested attorney fee by 25% for work allegedly done, but which is not reflected in any form of documentation is, at best, questionable. Also absent from the record is an indication of the nature and extent of the services which underlie the $1,500 bill from the Kansas local counsel. Plaintiff does nothing more than state that a $1,500 bill was received, without presenting any sort of documentation for the services the bill reflects.

More importantly, the attorney fee award in this case is based solely upon the federal odometer statute. Plaintiff brought the original action claiming damages under the federal statute and under common-law fraud. Plaintiff's counsel never distinguished in their time records the amount of time spent on the common-law fraud count (for which attorney fees are not recoverable) and the amount of time spent on the federal statutory claim (for which attorney fees are recoverable). The federal odometer claim was not a novel or difficult question. The defendants admitted they had failed to provide federal odometer statements. Plaintiff's counsel had stated prior to the trial that he could try the federal count in his sleep, and had always "regarded the federal odometer violation to be very clear."

There is nothing about the present case which would have precluded Brown from other employment. In fact, Brown indicated that the reason he was unable to timely respond to the partial summary judgment motion on the common-law fraud count was that he had been in trial and depositions on other cases. No evidence was introduced relevant to the customary fee charged in federal odometer cases. Counsel's fees were partly fixed and partly contingent. There were no unusual time limitations imposed by the case. Plaintiff's counsel obtained $10,500 in total damages for his client. He had originally sought $28,500 under the federal odometer claim. Counsel testified that the award was "a good result and not a great result." The length and nature of the professional relationship between plaintiff and counsel was not a factor, nor was the "undesirability" of the case. With regard to awards in similar cases, plaintiff cited only one case. Citing to one attorney fee award case does not indicate what the typical or normal result may be in similar cases.

Finally, with regard to the expertise, reputation, and ability of the attorneys, plaintiff's counsel contends that he "specializes" in federal odometer cases. The present case, however, was counsel's first federal odometer case. In addition, plaintiff seeks attorney fees for three attorneys: Brown, an associate, and Brown's local counsel. Brown's associate and local counsel were present throughout the trial. Appellees point out that damages, not liability, was the primary issue and, in that regard, plaintiff's counsel could not qualify his expert to testify on damages. We conclude that the record does not support a finding that the district court abused its discretion.

The judgment of the district court is affirmed.