**KELLEY METAL TRADING COMPANY, Plaintiff,**

v.

**AL–JON/UNITED, INC., Defendant.**

**No. 92–4116–RDR.**

United States District Court,
D. Kansas.

Oct. 22, 1993.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, Elliot M. Kaufman, Ronald H. Isroff, F. Thomas Vickers, James A. DeRoche, Ulmer & Berne, Cleveland, OH, for plaintiff.

John H. Stauffer, Jr., Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Mark I. Wallach, David James Carney, Calfee, Halter & Griswold, Cleveland, OH, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This lawsuit arises from the plaintiff's purchase of a wire reclamation furnace from the defendant. Plaintiff is an Ohio corporation while defendant is a Kansas corporation. Jurisdiction is based upon diversity of citizenship. This matter is presently before the court upon defendant's motion for summary judgment. The court has heard oral argument on the motion and is now prepared to rule.

Plaintiff asserts three claims against the defendant:[1] fraud, breach of implied warranty of merchantability, and breach of express

---

1. Initially, plaintiff also asserted a claim of breach of implied warranty of fitness for a particular purpose. Plaintiff, however, has conceded that it is no longer pursuing this cause of action.

warranty. Defendant seeks summary judgment on all of the plaintiff's claims.

■ In considering the defendant's motion for summary judgment, the court must examine all the evidence in the light most favorable to the plaintiff. *Barber v. General Electric Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings . . ." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

Some background is necessary to understand the arguments of the parties. In 1987, R. Blake Kelley, President of Kelley Metal Trading Company, became interested in starting a scrap wire reclamation business. After seeing an advertisement circulated by Al–Jon, Inc., Kelley contacted the defendant and expressed an interest in purchasing a wire reclamation furnace. After some discussions, Kelley Metal eventually purchased a furnace. The purchase agreement was signed by Blake Kelley on June 28, 1990 and accepted by Al–Jon/United on July 2, 1990. Plaintiff then sought a permit to operate the furnace from the Ohio Environmental Protection Agency. After some testing, the Ohio EPA denied plaintiff a permit to operate the furnace. Plaintiff then brought this action seeking compensatory and punitive damages.

## I. Fraud

Plaintiff contends that it was a victim of fraud in the purchase of the wire reclamation furnace. In its amended complaint, plaintiff alleges that R. Blake Kelley relied upon the following false representations made by representatives of the defendant in deciding to purchase the furnace:

(a) that wire with chlorinated insulation accounted for only a small percentage of the scrap wire available for reclamation;

(b) that wire with chlorinated insulation could easily and economically be separated from wire with non-chlorinated insulation;

(c) that the Al–Jon/United reclamation furnace could pass all applicable EPA emission tests;

(d) that the Al–Jon/United wire reclamation furnace could legally process 250 to 300 pounds of combustible insulation.

■ To recover on a claim of fraudulent misrepresentation under Kansas law, a plaintiff must show that a defendant made a representation or statement of material fact which was untrue and known to be untrue or recklessly made with disregard of its truth or falsity, on which plaintiff reasonably relied to his detriment. *Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 738 P.2d 1210, 1230 (1987). The reliance element has both an objective and subjective prong: (1) the plaintiff must actually rely on the misrepresentations and thereby incur damages; and (2) plaintiff's reliance must be reasonable and justifiable. *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 677 (D.Kan.1989).

In its motion for summary judgment, defendant argues that plaintiff has failed to demonstrate a fraud claim because plaintiff has not shown that (1) plaintiff actually relied on defendant's representations; (2) plaintiff's

reliance was reasonable; and (3) defendant intended to defraud plaintiff.

### A. *Actual Reliance*

██ The defendant begins by contending that the record shows that plaintiff never actually relied upon the representations of the defendant. This argument is almost exclusively directed at plaintiff's fraud claim based upon the representation that the furnace would pass EPA tests. *See* Memo. in Support of Motion for Summary Judgment at 14 ("Blake Kelley's conduct shows that he did not actually believe Al–Jon could guarantee the EPA's permit."). The contention is based upon two premises. First, the defendant asserts that the record shows that Blake Kelley had serious doubts about the ability of the furnace to pass EPA tests. Second, the defendant contends that Blake Kelley's insistence upon a buy-back provision in the contract further demonstrates his lack of actual reliance in the defendant's representations concerning the ability of the furnace to pass the EPA tests. The defendant relies upon *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 739 P.2d 444 (1987) for support of its lack of actual reliance argument.

The two bases for defendant's argument are obviously related. The buy-back provision was contained in a letter written by Kelly Pettit, President of the United division of Al–Jon/United, to Blake Kelley. The pertinent part of the letter, which became a part of the purchase agreement pursuant to an agreement between the parties,[2] reads as follows:

> In the event Ohio EPA does not issue a **Permit To Install** for the G–466, we will refund your deposit.
>
> If stack testing is a requirement prior to the issuance of **Permit To Operate,** then it would be your responsibility to pay for same. We would have one of our representatives present during the test (at no

charge to you) to ensure that the machine is operating properly. Likewise, if additional opacity or temperature monitoring equipment has to be installed, it would be at your expense. In the event the machine would not "pass" the stack test, we would modify it and retest it at our expense within 30 days of our notification of noncompliance.

> If, after a second stack test, Ohio EPA would not issue the **Permit To Operate,** then we will refund the total purchase price of the machine to you, less $1,500.00 per month or any portion thereof from the date of arrival of the machine.
>
> Once the **Permit to Operate** is issued by the state, the agreement to repurchase the equipment becomes null and void. The agreement to repurchase the equipment applies only to the equipment supplied by Al–Jon, Inc, United Division and does not extend to any other associated equipment nor (sic) lease *obligations*.

The court agrees with the defendant that *Slaymaker* requires the entry of summary judgment on plaintiff's fraud claim based upon the representation that the furnace would pass EPA tests. At oral argument, plaintiff's counsel conceded *Slaymaker* controls this particular claim.[3] The court, however, does not find that the defendant is entitled to summary judgment on the other fraud claims.

An examination of *Slaymaker* is necessary to understand the court's conclusions concerning the plaintiff's fraud claims. In *Slaymaker,* plaintiff alleged that the defendant made fraudulent misrepresentations concerning the authenticity of a 1962 automobile. After hearing representations about the car's "originality" and mileage, plaintiff undertook an investigation concerning the car. Plaintiff was ultimately induced to buy the car when the seller agreed to a buy-back provision if the car turned out not to be as represented. The Kansas Supreme Court affirmed a grant

---

2. The letter was ultimately signed by both parties under the following provision:
> This letter has become an integral and legally superior document relative to a Purchase Agreement Proposal # 0690098–02 between Al–Jon/United and Kelley Metal Trading Co.

3. Plaintiff's counsel also indicated at oral argument that plaintiff was not asserting this particular claim. The court was confused by this statement, given the plain language of the amended complaint. In any event, the court shall consider the claim.

of summary judgment to the defendant, finding that the record showed that plaintiff had not actually relied upon the representations concerning the car. 739 P.2d at 451–52. In reaching this conclusion, the Court cited two factors: (1) evidence that plaintiff had "actively doubted" the representations about the car and, in fact, knew that some of the representations concerning the car were false; and (2) evidence that plaintiff was induced to buy the car only after the seller agreed to repurchase the car if the representations were untrue. 739 P.2d at 452–53.

The record in this case shows that plaintiff did actively doubt the representations concerning the ability of the furnace to pass EPA tests and was ultimately induced to purchase the furnace, at least in part, based upon the agreement of the defendant to buy back the furnace if it did not pass EPA tests. Accordingly, as previously stated, *Slaymaker* does control this particular fraud claim. *Slaymaker*, however, does not require the entry of summary judgment to the defendant on the other claims.

 Plaintiff has also asserted that Blake Kelley was induced to purchase the furnace based upon several other fraudulent misrepresentations made by the defendant. The defendant has failed to show that Kelley "actively doubted" the other representations made by the defendant. Moreover, defendant has failed to show that Kelley insisted upon the buy-back provision because of these other representations. The letter itself refers only to the ability of the furnace to pass the EPA tests and does not even mention the other representations. Reading the record in the light most favorable to the plaintiff, as we must in evaluating a summary judgment motion, we find there is adequate evidence to support plaintiff's contention that Blake Kelley actually relied upon the other representations in purchasing the furnace. A misrepresentation need not be the sole cause of the plaintiff's conduct which results in his injury, as it is enough for the plaintiff to show that absent the misrepresentation he would not have acted to his disadvantage. *Slaymaker*, 739 P.2d at 450.

In its briefs and at oral argument, the defendant contended that all of plaintiff's fraud claims should be considered together because the record shows that Blake Kelley did not actually rely upon any of the alleged fraudulent misrepresentations. Defendant points to testimony from Blake Kelley's deposition in support of this position. The pertinent portion of the deposition reads as follows:

> The things that concerned me prior to agreeing to purchase the furnace from Al–Jon, certainly included this buy-back provision in the event that we were not permitted, but also included a reliance on my part on representations that they made, Al–Jon made to me regarding productivity and particulate control which are, in addition, are (sic) functions of ingredients of the permit, EPA permit, and also in their representations to me about chlorine which I relied on, that was not something to be concerned about, and which also is incorporated in the terms of the permit to install, the application, the EPA application. So what I felt needed to be included and didn't appear to be included to me, was the buy-back provision.

The court is not convinced that this testimony requires that all of the fraud claims be considered together. There is other evidence in the record indicating that Blake Kelley did indeed rely upon the other representations in purchasing the furnace.

### B. *Reasonable Reliance*

 The defendant next argues that the evidence demonstrates that Blake Kelley could not have reasonably relied upon the alleged representations made by its representatives. The defendant points to two reasons why any reliance by Blake Kelley would be unreasonable: (1) his investigation concerning the defendant's furnace and the wire reclamation business; and (2) his general business background and his specific experience in the scrap metal business. The defendant further contends, relying upon *Jacobs Mfg. Co. v. Sam Brown Co.*, 792 F.Supp. 1520 (W.D.Mo.1992) and *Okura & Co. (America), Inc. v. Careau Group*, 783 F.Supp. 482 (C.D.Cal.1991), that Blake Kelley's reliance upon the defendant's statements was unreasonable because their contract "memorialized

those statements and provided a remedy for their falsity."

█ The court finds no merit to these arguments. Genuine issues of material facts remain in dispute on these contentions. A review of the entire record fails to reveal that Blake Kelley's reliance on these representations (other than the representation that the furnace would pass EPA tests) was unreasonable as a matter of law. A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable. *Goff v. American Savings Ass'n of Kansas*, 1 Kan.App.2d 75, 561 P.2d 897, 903 (1977). Whether Blake Kelley's investigation into the wire reclamation business and whether his business background precludes reasonable reliance by him upon the alleged statements made by the defendant is a question for the jury under the record provided to this court. Moreover, defendant's reliance upon *Jacobs* and *Okura* is misplaced. In those cases, the parties asserting fraud were faced with written agreements which contained statements that were contrary to the alleged fraudulent misrepresentations. Under those circumstances, the court concluded that any alleged reliance by the parties asserting fraud was unreasonable. These cases have no application here since the purchase agreement and accompanying documents do not contain any information about the alleged fraudulent misrepresentations claimed by the plaintiff in this case. These documents fail to address the production capabilities of the furnace or the availability of wire for use in the furnace. Accordingly, we do not find that the defendant is entitled to summary judgment on this argument either.

### C. *Intent to Defraud*

█ The defendant's final argument is that the record fails to show that the defendant actually intended to defraud the plaintiff.[4] Again, this argument is directed pri-

marily at the plaintiff's claim that the furnace could pass EPA standards. While we agree once again that summary judgment is appropriate as to this claim, we again reiterate that genuine issues of material facts preclude the entry of summary judgment on other fraud claims. The existence of fraud, and particularly intent to defraud, is ordinarily a question of fact. *Stauth v. Brown*, 241 Kan. 1, 734 P.2d 1063, 1068 (1987). The record here reveals numerous facts that remain in dispute and prevent the entry of summary judgment.

## II. The Other Claims

The court next turns to plaintiff's claims of breach of the implied warranty of merchantability and breach of express warranty. Plaintiff seeks the following damages for breach of these warranties: (1) the cost of the furnace; (2) the difference in the value of the furnace as warranted and the actual value of the furnace; (3) the costs associated with the preparation, installation and testing of the furnace; (4) lost profits and lost business; and (5) other damages that cannot be ascertained at this time. The defendant contends that plaintiff's claim for damages based on breach of warranties, express or implied, must fail because the contract between the parties expressly limited plaintiff's remedies. Accordingly, defendant argues that plaintiff's claim for damages must be denied because it directly contradicts the terms of the contract. Defendant points to the remedies provided for in the document entitled "Service Policy, Warranty and Al–Jon/United, Inc. Responsibility and Liability" ("Service Policy") and the remedies provided for in the letter of June 15, 1990. The Service Policy document provides in pertinent part as follows:

> AL–JON/UNITED, INC. does hereby extend its warranty against defective materials and workmanship from the date of delivery as follows:
>
> . . . . .

---

4. In order to prevail on its fraud claims, plaintiff can show that the defendant either made the untrue representations with intent to deceive or with reckless disregard for the truth. *Tetuan*, 738 P.2d at 1230. Defendant fails to recognize this distinction in making this argument. The court need not consider whether the plaintiff has sufficiently demonstrated that the defendant made the statements with reckless disregard for the truth because we find genuine issues of material facts exist as to whether the defendant acted with the intent to deceive the plaintiff.

K. United, Inc. shall under no circumstances be responsible for any loss of business, profit or loss of wages by purchaser or any other consequential damages.

L. The liability of Al–Jon/United, Inc. to the purchaser arising out of the supplying of the equipment or its use, whether on warranty, contract or negligence, shall not in any case exceed the cost of correcting defects in the equipment or part thereof. Upon expiration of the warranty period all such liability shall terminate.

. . . . . .

Q. This warranty as stated herein, constitutes Al–Jon/United, Inc.'s full and complete warranty, is exclusive of and in lieu of all other warranties, whether written, oral or implied (including any warranty of merchantability or fitness for purpose). This warranty may not be altered or amended except by written agreement of both parties.

R. The foregoing shall constitute the sole remedy of the purchaser and the total responsibility and liability of Al–Jon/United, Inc.

With regard to the letter, defendant argues that the letter provides an exclusive remedy for the plaintiff: repurchase of the furnace. Defendant asserts it has attempted to repurchase the furnace in accordance with the letter, but the plaintiff has refused to return the furnace or accept its offer to buy it back.

Plaintiff appears to contend that the letter of June 15, 1990 replaced the provisions of the Service Policy and provided a "non-exclusive" repurchase remedy. Plaintiff suggests that the repurchase remedy was not exclusive because the parties failed to designate the remedy as exclusive as required by K.S.A. 84–2–719(1)(b).

The arguments asserted by the defendant confuse two concepts: limitation of remedies and exclusivity of remedies. Depending upon its particular contention, the defendant relies upon different documents to support its arguments. On the one hand, defendant argues that the June 15th letter created an exclusive contract remedy: repurchase of the furnace. On the other hand, defendant contends that plaintiff's remedies for breach of warranty have been limited by the June 15th letter and the Service Policy document, which defendant argues must be read together at least to the extent that they do not conflict.

■ In Kansas, parties to commercial transactions can create their own remedies. K.S.A. 84–2–316(4). The parties may also adopt an exclusive remedy. K.S.A. 84–2–719(1)(b). Resort to a remedy is optional unless the remedy is expressly designated as exclusive. Kansas Comment 1983 to K.S.A. 84–2–719(1)(b). If the remedy is not expressly made exclusive, then the aggrieved party has all of the other remedies under Uniform Commercial Code available to it. *Id.*

■ The court finds no merit to the defendant's contention that the buy-back provision contained in the June 15th letter is the plaintiff's exclusive remedy in this case. The letter contains no indication that the buy-back provision is intended to be an exclusive remedy. Without such an express designation, the buy-back provision cannot, by itself, form an exclusive remedy.

The defendant also contends that the provisions contained in the letter must be read in accord with the provisions contained in the Service Policy. In this regard, the defendant asserts that the use of the term "integral" in the June 15th letter meant that the parties intended to make these provisions a part of their agreement, including the provisions in the Service Policy document.

■ The arguments of the defendant, however, overlook a number of matters. In reaching its conclusions, the defendant has failed to consider the fact that the parties agreed that the provisions of the June 15th letter constituted a "legally superior document." The ambiguity of the provision at the bottom of the June 15th letter creates a number of issues that the parties have not addressed. Moreover, the defendant has failed to respond to the plaintiff's contention that the provisions of the Service Policy do not apply here because these provisions apply only to claims concerning "defective materials and workmanship." In sum, the de-

fendant has not persuaded the court that its view of the remedies available to the plaintiff on its warranty claims is correct. Accordingly, we cannot grant summary judgment to the defendant on these claims.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. #78) be hereby granted in part and denied in part. The defendant is hereby granted summary judgment on plaintiff's fraud claim based upon the representation that the furnace would pass EPA standards. The remainder of the motion is hereby denied.

**IT IS SO ORDERED.**